STEPHEN F. HANFORD

*v.*

ISAAC BLESSING.

1. MORTGAGE—*contract to re-purchase.* Contracts for re-purchase, made contemporaneously with conveyances of real estate, absolute in form, are, sometimes, strong evidence tending to show the conveyances are intended to be mortgages; but where it appears the parties really intend an absolute sale and a contract allowing the vendor to re-purchase, such intention must control.

2. INTERLOCUTORY ORDER—*not subject of review.* The action of a judge in imposing terms upon granting a preliminary injunction, can not be considered in this court. The order granting a preliminary injunction is interlocutory only, and, therefore, not the subject of review.

APPEAL from the Circuit Court of Kankakee county; the Hon. NATHANIEL J. PILLSBURY, Judge, presiding.

Mr. THOS. P. BONFIELD, for the appellant.

Mr. JAMES N. ORR, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The purpose of the bill in the present case is to require appellee to account for certain moneys which appellant alleges he advanced for appellee, at his request; also, for a balance due on losses incurred in a certain co-partnership, which for a short time existed between them, and to enjoin the collection of a judgment obtained by appellee against appellant on a promissory note.

So much of the case as relates to the co-partnership may be dismissed from further consideration, with the remark that appellant does not show, by a preponderance of evidence, that he is entitled to recover anything on that account. We can not determine, from the evidence in the record, that appellant's testimony is entitled to a higher degree of credence than that of appellee, and the case made by him, on this branch of the litigation, is completely disproved by the testimony of appellee.

It appears that, in November, 1864, appellee was the owner of a warehouse at Manteno, located on ground belonging to the Illinois Central Railroad Company, for which appellee held a lease from that company. This warehouse, and the ground included by the lease, were transferred by appellee to appellant, and the chief question in dispute between the parties is, was this transfer in the nature of a mortgage, or was it an absolute conveyance of the property?

The testimony of the respective parties on this point, as in regard to the co-partnership transactions, is directly contradictory—appellant testifying that it was intended to be a mortgage, and appellee that it was an absolute conveyance.

Title was transferred by appellee to appellant by executing and delivering a quitclaim deed to the property, and an assignment of the lease held from the Illinois Central Railroad Company. Nothing appears, either in the deed or the assignment, tending to show that the transfer was not intended to be absolute; but an agreement between the parties was, at the same time, reduced to writing, whereby the property was re-sold to appellee, upon condition that he should repay to appellant $3000, with ten per cent per annum interest, together with all moneys he should expend on account of the property for taxes, repairs and improvements, and also one-half of what might be lost in certain partnership transactions.

Contracts for re-purchase, made contemporaneously with conveyances of real estate, absolute in form, are, sometimes, strong evidence tending to show the conveyances are intended to be mortgages; but where it appears the parties really intend an absolute sale and a contract allowing the vendor to re-purchase, such intention must control.

The peculiar phraseology of the contract providing that appellee should be allowed to re-purchase, we regard as furnishing strong, if not conclusive evidence, that the transfer to appellant was not intended to be a mortgage. It contains this language: " That said party of the first part hereby covenants and agrees, that if the party of the second part shall first make the payment and perform the covenants hereinafter mentioned on his

part to be made and performed, the said party of the first part will convey and assure, to the party of the second part, in fee simple, clear of all incumbrances whatever, made, suffered or done by the said party of the first part, only, by a good and sufficient warranty deed, the following piece or parcel of ground," etc. Then follows a particular description of the property, after which is the following: "And the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of $3000—the same shall be paid on the 29th day of November, A. D. 1869, with annual interest, at ten per cent per annum; and also all money expended in the repair and improvement of said warehouse, by said party of the first part; and, also, one-half of all losses that may result over and above profits in the grain business to be carried on in said warehouse, according to the terms of certain articles of agreement, entered into on the 10th day of November, 1864, between said parties; and to pay all taxes, assessments or impositions levied or imposed upon said land, subsequent to the year 1864. And, in case of the failure of the said party of the second part to make either of the payments, or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by the said party of the first part, in full satisfaction and in liquidation of all damages by him sustained; and he shall have the right to re-enter and take possession of the premises aforesaid."

The latter portion of this contract, especially, is utterly inconsistent with the idea that appellant held the property as mortgagee, to secure the payment of indebtedness to him from appellee. Moreover, other circumstances in the transaction are, in our opinion, still more conclusive against appellant's position.

Prior to the transfer, appellee does not appear to have been indebted to appellant. The amount appellant was to pay for the property was $3000. Of this, $2230 was to be paid to ap-

pellee's creditors, and for the remainder, $770, appellant gave appellee his promissory note, bearing interest at the rate of ten per cent per annum, and payable in five years from date; and to secure its payment, he and his wife, who joined him for the purpose of relinquishing her right to dower in the premises, *executed and delivered to appellee a mortgage upon this same property.* To all this is to be added the repeated assertions of appellant that he had bought the property and owned it, and his frequent denials that appellee had any interest in it, proved by apparently disinterested witnesses, also his acts of ownership, such as renting the property to other parties, etc., inconsistent with the position of a mere mortgagee.

The chief value of the property was in the warehouse, which, appellee testifies, was worth $5000. This has been burned, and the anxiety of appellant to assume the attitude of mortgagee appears, from the evidence, to have arisen since, and, doubtless, in consequence of that misfortune.

We feel constrained, necessarily, to hold the transfer by appellee to appellant was absolute, and not by way of mortgage.

We are unable to discover any other ground upon which appellant can claim the aid of a court of equity. His bill is not framed with the view of having specific performance of the contract of re-sale; but, if it were so framed, the evidence is insufficient to entitle him to such relief.

The objection to the conduct of the judge in imposing terms upon which he granted the preliminary injunction, can not be considered here. The order for that purpose was interlocutory only, and, therefore, not the subject of review. *Marble* v. *Bonhotel*, 35 Ill. 240. Apart from this, however, appellant submitted to the order, obtained all the advantages which he could, in any event, have derived from a temporary injunction, and does not appear to have been materially prejudiced by the conduct of which he complains. Not being entitled to relief on final hearing, he could not have been injured had the court refused to grant him a temporary injunction upon any terms.

The decree is affirmed.

*Decree affirmed.*