## MORRIS v. NYSWANGER.

1. Whether the execution of an assignment of a bond for a deed, the recitals of which authorize the holder of the legal title to convey the same to the assignee of the bond, was intended to effect an absolute sale, or to operate as a mortgage, is a question to be determined from the facts and circumstances in evidence.

2. An assignment of a bond for a deed which purports on its face to convey absolutely all the interest which the assignor has in certain property will not be *held* to operate as a mortgage given to secure an existing debt, unless it affirmatively appears that such was the intention of the parties to the transaction; and an agreement to resell the property upon the payment of a certain sum of money at a specified time, made immediately subsequent to the assignment, does not change the character of the transaction, and is not inconsistent with the idea of a sale.

3. To secure the payment of a note for $200, R. conveyed by warranty deed, certain lots, worth about $500, to H., who executed and delivered to R. as a part of the same transaction, a bond for a deed, which R. subsequently, and in consideration of $228, assigned to N., and authorized H. upon payment of R.'s promissory note for $200, to convey the lots by warranty deed to N. Subsequent to the assignment above mentioned, though on the same day, but after the parties had separated, N. executed to R. a contract for a deed, of which time was made the essence, and took R.'s note for $228 as evidence of the amount which R. must

pay at a specified time in order to repurchase the property. Shortly afterwards, and upon payment of the $200 note, H. conveyed the property by warranty deed to N., in accordance with the terms of the assignment, and at the special instance and request of R. *Held*, under the evidence, that the transaction was an absolute sale of the property.

(Syllabus by the Court. Opinion filed April 26, 1894.)

Appeal from circuit court, Pennington county. Hon. WILLIAM GARDNER, Judge.

Action to have a deed adjudged and declared to be a mortgage, and for an accounting of rents and profits. There was judgment for plaintiff and defendant appeals. Reversed.

The facts are fully stated in the opinion.

*Wood & Buell* and *Schrader & Lewis*, for appellants.

A deed with a contemporaneous agreement to recovery will not be reconsidered a mortgage unless such was already the intention of the parties. Wallace v. Johnstone, 129 U. S. 58 (B. 32 Co-op. Ed. 619); Stehl v. Dehn, 40 N. W. 104; Smith v. Crosby, 2 N. W. 104. Even if the deed to the defendant was intended as a mortgage, still the grantee of an absolute deed with a defeasance intended as a mortgage may purchase the defeasance of the mortgagor when acting in good faith, and for its full value, and acquire full title to the premises. Bazemore v. Mullins, 12 S. W. 474; Green v. Butler, 26 Cal. 595; Vennum v. Babcock, 13 Io. 194; Scanlon v. Scanlon, 25 N. E. 652; Carpenter v. Carpenter, 70 Ill. 457; 1 Wash. Real Prop. § 24, p. 496; Truel v. Skinner, 17 Mass. 213.

By receiving the $50.00 and agreeing to cancel the bond and consider the deed valid, allowing defendant to enter into the possession of the premises, and make valuable improvements thereon and renting a portion of the premises, the grantor, one Roberts, was estopped from denying the validity of the transfer. Such an agreement was not within the statute of frauds. Brown's Statutes of Fraud, Sec. 60; Trull v. Skinner, 17 Pick. Mass. 213; Harden v. Phillips Academy, 12 Mass. 464; Mason v. Grant, 12 Me.; Mygott v. Tarbell, 47 N. W. 618; McNight v. Bell, 19 A. Pa. 1036. In any view of the law,

the defendant having paid full value and gone into possession and made valuable improvements, is entitled to specific performance and even though the sale was by parol, it was not within the statute of frauds. Calanhin v. Branstetter, 24 Pac. 149; 84 Cal. 243; Martin v. Patterson, 2 S. E. 859, p. 361; Lipp v. Hunt 41 N. W. 843, 25 Neb. 91; Stat. S. D. Secs. 3617, 4624, 5621; Whinnemore v. Martin, 46 N. W. 118.

He who asks equity must do equity, and where land is conveyed absolutely to secure an indebtedness the owner of the equitable title cannot have the deed cancelled or title quieted without first tendering or paying the debt. Rodreguy de Cazora v. Arsena, 22 Pac. 74; Bazomore v. Mullins, 12 S. W. 474; Vennum v. Babcock, 13 Io. 194; Whelan v. Reilly, 61 Mo. 505; Stull v. Harris, 11 S. W. 104; Ellis v. Ellis, 4 So. 868.

Where the findings of fact conflict with the conclusions or judgment, the judgment should be reversed. Popenheim v. Metropolitan Co., 7 N. Y. S. 679; Atchinson Co. v. Woodcock, 22 Pac. 421, Hayne New Trial, 242, Sub. 5; Reese v. Corcoran, 52 Cal. 495; Manley v. Howiet, 55 Cal. 96.

*Sidney J. Parsons* and *W. H. Mitchell*, for respondent.

In construing a transaction when there is a question whether an instrument is a mortgage or a deed, courts resolve all doubts in favor of the construction of the instrument as a mortgage. Sweetland v. Sweetland, 3 Mich 482; Gassert v. Bogk, 1 Mo. 240. Parol evidence that the parties intended the transaction as an absolute sale is held to be inadmissible. Palmer v. Guernsey, 1 Wend, 248. The rule is if the transaction was a mortgage it remains such, the maxim being "Once a mortgage always a mortgage." Comp. Laws, 4351, 4348; Jones on Mort. Secs. 250, 263, 264, 340; Leahigh v. Guernsey, 7 Wend 248; Williams v. Thorn, 11 Paige, 459; Marks v. Pell, 1 Johns Ch. 594; Wilson v. Giddens, 28 Oh. St. 554; Batty v. Snoo, 5 Mich. 231; Wright v. Batts, 13 Vt. 341. A deed absolute on its face will be construed as a mortgage in connection with a bond for a re-conveyance executed as part of the same transaction.

Cosby v. Buchanan, 1 Ala. 898; Frey v. Campbell, 3 S. W. 368; Booth v. Haskins, 17 Pac. 225; Farmer v. Grase, 42 Cal. 169; Montgomery v. Spect, 55 Cal. 352. The test to be applied in construing a transaction where the question at issue is whether an instrument is a deed or mortgage is, was the reason for the conveyance the securing of a debt? Jones on Mortgages, 259, 265, 266, 324, 325; Conway v. Alexander, 7 Cranch, 218; Henley v. Hataling, 41 Cal. 22; Wilson v. Gidding, 28 O. St. 567; Kreamer v. Adelsberger, 122 N. Y. 467 (25 N. E. 859.)

In equity it is immaterial that there be any bond or agreement to reconvey, parol evidence being sufficient to prove the transaction a mortgage. Jones on Mortgages, Sec. 246, 250, 257; Brinkman v. Jones, 44 Wis. 498; Odell v. Montrose, 68 N. Y. 499; Walker v. Tiffin, 2 Cal. 89; Kramer v. Adelsberger, 122 N. Y. 467. A judgment creditor may show a deed to have been a mortgage the same as the grantor or mortgagor. Jones on Mortgages, Sec. 337; Van Buren v. Olmstead, 5 N. Y. 9; Christie v. Hale, 46 Ill. 117. No executory agreement, either contemporaneous or subsequent, will make a mortgage a deed. Conway v. Alexander, 7 Cranch, 237; Batty v. Snook, 5 Mich. 230. Pomeroy's Equity, Sec. 1193, 1194.

It is presumed from the sheriff's deed that there was a valid judgment and regular levy and sale and nothing more need be shown until this is impeached. Rorer on J. S., Sec. 808; Comp. Laws, Sec. 5160; Stow v. Steele, 45 Ill. 328; Rorer, Sec. 814, p. 322.

The payment of $50.00 by defendant to the grantor Roberts would not entitle the defendant to the specific performance of a parol contract for the purchase of the land. The only right it gave the defendant without a proper release or conveyance, was a right to recover the money from Roberts. Odell v. Montrose, 68 N. Y. 499; Leehigh v. White, 8 Nev. 147; Comp. Laws, Secs. 3245, 3246; Jones on Mortgages, Sec. 337.

FULLER, J. Briefly stated, the material facts of this case that are undisputed are about as follows: On the 5th day of

June, 1882, one Charles A. Roberts and M. A. Roberts, his wife, executed and delivered to H. G. Hall & Sons a warranty deed of the property involved in this suit, as security for a loan of $200, evidenced by a promissory note of even date therewith due on or before June 5, 1883; and at the same time, and as a part of the same transaction, H. G. Hall & Sons executed to Charles A. Roberts a bond for a deed and thereby and therein obligated themselves to reconvey said property, by deed in fee simple, on the payment of said note at or before the same matured. On the 14th day of August, 1882, Charles A. Roberts assigned said bond for a deed to the defendant, Nyswanger, the consideration named in the instrument being $228. Said assignment contains among other provisions, the following: "To have and to hold the same unto the said party of the second part, the aforesaid bond, and all my rights thereunder; and in default of payment to H. G. Hall & Sons of the amount of money agreed by me in said bond to be paid on or before June 5th, 1883, I authorize the said party of the second part to pay said amount and charge the same to me, which said charge shall be conclusive against me, and authorize the said H. G. Hall & Sons to execute and deliver a deed of conveyance to said Aaron Nyswanger, and with like force and effect as if the same was delivered to me." On the same day the defendant Nyswanger, executed and delivered to said Charles A. Roberts a bond for a deed, wherein it was covenanted and agreed that defendant Nyswanger, would execute and deliver to the said Roberts a warranty deed of said premises upon the payment of 228 on the 5th day of June, 1883, together with interest at the rate of 2 per cent per month. Shortly afterwards the defendant, Nyswanger, paid the $200 note of Charles A. Roberts to H. G. Hall & Sons, and said H. G. Hall & Sons executed and delivered to defendant a warranty deed to the property in controversy. On November 23, 1883, plaintiff obtained judgment against Charles A. Roberts for $202.04. On December 12, 1883, an execution was levied on the premises, and the same

were sold on the 26th day of January, 1884, to the plaintiff, for the amount of the judgment, including costs; and on the 1st day of February, 1886, the plaintiff received a sheriff's deed of the premises, and now claims to be the sole and exclusive owner thereof. Plaintiff's complaint contains the following prayer for judgment: First, that said above-described deed be adjudged and declared to be a mortgage, and that the plaintiff be adjudged a redemptioner from the same; second, that the said defendant be compelled to account for the value of the rents and profits, and use of said premises, and that the amount thereof be deducted from the amount of principal and interest now due upon the said promissory note secured by said mortgage,—and for such other and general relief as is consistent with equity. The court found for the plaintiff and against the defendant, on all the issues. From a judgment and decree which, in effect, quieted the title to the property in plaintiff, and from an order denying a motion for a new trial, defendant appeals to this court.

One of the important questions presented to the trial court —and, by the, record, to this court,—for determination is whether the relation of mortgagee and mortgagor was created and existed between Roberts and the defendant, or whether the transaction constituted an absolute conveyance of all the interest Roberts had in the property at the time he assigned his bond for a deed to the defendant, Nyswanger. From the evidence it appears that the consideration for the assignment to Nyswanger of the bond for a deed from Hall & Sons to Roberts was $228; that the consideration for the deed from Hall & Sons to the defendant was the payment of the Roberts note of $200. And the evidence shows that the defendant subsequently paid to Roberts, in connection with the transaction, the sum of $50; and at the time Roberts assigned his bond for a deed to the defendant, and at the time the warranty deed was executed by Hall & Sons, the full cash value of the property appears to be something less than $500; and that the defendant

subsequently placed improvements upon the premises of about the value of $2,000. As matters of fact, the court found, in effect, and among other things, that a sale of the property was neither designed nor made by the assignment of the bond for a deed, but that the same was executed to secure the payment of $228 by Roberts to Nyswanger, and that the same was a mortgage, and so intended by the parties thereto, and that the deed of the property executed by Hall & Sons to defendant was intended to be, and in fact was, but an assignment of their mortgage interest to said Nyswanger, and that the $50 paid by Nyswanger to Roberts on the 7th day of July, 1883, was a loan to said Roberts, and nothing more. As conclusions of law, the court found, in substance, upon the above and other findings of fact, that, up to the date of the sheriff's deed to Morris (February 1, 1886), Charles Roberts held the legal title to said premises, subject, after January 26, 1885, to the termination thereof by said Morris taking said deed; that the payment of $50 on or about July 7, 1883, made by Nyswanger to Roberts, was not intended as a purchase of Roberts' interest in the property, but, had it been so intended, it was void, under the statute of frauds, and his interest in said premises could not have been transferred by parol, and he would still have remained the owner of said premises; that by virtue of the sheriff's deed executed February 1, 1886, plaintiff became and ever since has been, the owner in fee of said premises; and that the defendant never at any time held any other or different interest in said premises than that of a mortgagee thereof. The judgment of the court contains the following paragraph: "That all adverse claims of the defendant, and all persons claiming or to claim said premises, or any part thereof, through or under said defendants, are hereby adjudged and decreed to be invalid and groundless, and that the plaintiff be and is hereby, declared and adjudged to be the lawful owner of the land described in the complaint, and hereinafter described, and every part and parcel thereof, and that the title thereto is ad-

judged to be quieted against all claims, demands or pretentions of defendant, and the said defendant is hereby perpetually estopped from setting up any claim thereto, or any part thereof."

It becomes necessary to review the evidence, because counsel of appellant urge that the court erred in its findings of fact and conclusions of law in plaintiff's favor, for the reason that the same is not supported by the evidence, and that under the law and facts, as found, the decision is not sustained and should be reversed. The provisions of the assignment by Roberts of his contract or bond for a deed to the defendant, Nyswanger, when considered apart from the bond or contract for a deed, of even date therewith, executed by defendants to Roberts, are sufficient, in our opinion, to transfer the interest of Roberts to Nyswanger, subject to the lien of Hall & Sons for $200; and the payment by Nyswanger of said $200, and the execution of the deed according to the recitals of the assignment, would vest in him a fee simple interest in the property, unless it is found to be contrary to the intention of the parties immediately interested in the transaction; and, unless it so appear, the plaintiff would take nothing by his sheriff's deed, because Roberts had no interest at the time of the levy and sale by the sheriff. Had Hall & Sons, who held a warranty deed of the property, which was intended to operate as a mortgage securing a note for $200 purchased for its full value the interest of Roberts, and taken to themselves an assignment of the bond for a deed, they could have thus obtained and acquired a complete title to the property, and should it appear from the evidence that Nyswanger bought the property, and the bond for a deed was assigned by Roberts to Nyswanger for the purpose and with the intention of conveying said property absolutely, and that Roberts authorized Hall & Sons, who held the legal title, to convey the same to Nyswanger by warranty deed on the payment of $200, the subsequent execution of the bond for a deed by Nyswanger to Roberts would not be sufficient to defeat the intention of the . parties; and the law applicable to the former state of facts

would apply with equal force to the latter. The instruments in writing which evidence the transactions between Roberts and Nyswanger will not be held to constitute a mortgage unless the evidence shows that they were so intended by the parties, and the burden of proof in that regard is upon the plaintiff. Wallace v. Johnstone, 129 U. S. 58, 9 Sup. Ct. 243; Hanford v. Blessing, 80 Ill. 188; Smith v. Crosby, (Wis.) 2 N. W. 104; Stahl v. Dehn (Mich.) 40 N. W. 922.

It is contended by counsel for respondent that the assignment of the bond for a deed, and the contract to reconvey to Roberts, were one and the same transaction, and together constitute a mortgage given to secure a note of $228 of even date therewith, executed by Roberts, and payable to the defendant Nyswanger. The evidence shows that, at the time Roberts assigned the bond for a deed to Nyswanger, he was indebted to the firm of Keeler & Nyswanger in the sum of $228, for groceries, and Roberts testified that he assiged the bond for a deed to secure the payment of that debt. Judge NOWLIN, with whom the business was principally transacted, testified that in August, 1882, he had for collection an account of $228 against Roberts, in favor of Keeler & Nyswanger, and, failing in his efforts to get any money on the account, he proposed to Roberts to take property in settlement of the account, and told him he would buy the bond which he had on the property in question, and credit him therefor on the account which he owed to Keeler & Nyswanger. Witness testified as follows: "He wanted to know what I would give him for it. I told him I would give him a credit of $150 on the account for $228 which he owed Nyswanger. He wanted more for it, and on that day we did not agree on a price. I had made him an offer of $150, and he wanted $250. We talked about the property, what it was worth and the amount that would have to be paid,—the $200 to Hall. We could not agree upon a price that day. I saw Nyswanger that night, and told him that Roberts had offered me that bond for $250, and asked him what I should do. Nyswanger, after

considerable talk about the matter, told me that if I could buy
the property for the face of the account ($228), while he did
not regard the property worth that amount of money, he would
take the bond (an assignment of the bond), and give him a re-
ceipt in full for the account. On the following day I met Mr.
Roberts again, and we resumed negotiations about the land;
and, after considerable dickering one way and another, I told him
I would give him a receipt in full for the account of $228, for
the bond. He agreed to it, and went with me over to my office,
and executed this assignment, and signed it and acknowledged
it, and went with me over to Mr. Hall's bank, and in my pres-
ence told Mr. Hall that he had sold the bond; and at the same
time and in his presence, I spoke to Hall about making the
deed. Mr. Hall said he would make the deed at any time on
payment of the amount of money due him.  *  *  *  Rob·
erts said he guessed they would let him alone now, as they had
got all he had,  *  *  *  and Mr. Nyswanger said 'I don't want
any of the best of it,' or words to that effect. And I took the as-
signment and bond with me, and went over to my office. I
don't know how long I had been over,—but not a great while—
when Roberts and Nyswanger came over together, and Mr.
Nyswanger said: 'Roberts says he thinks he can buy that
property back after awhile, if he is given a chance to rebuy,
and, if it can be done in any way to make it proper and safe, I
am willing he should have the opportunity.' And I remember
telling him it could be done in two or three ways, but perhaps
the quickest and simplest way would be to give Mr. Roberts a
bond for a deed for the property. He says: 'If that is the
way to do it, that is what I want to do.'  *  *  *  Roberts un-
derstood it, and I understood it. At the time this deal was
made between Roberts and myself, there was never a word
spoken but what he was making a complete sale of that land.
That was what he did do, and what he intended to do. And so
far as the transaction between him and Mr. Nyswanger, while
it followed and grew out of their meeting at the bank, the part

of this transaction which led to the assignment by Mr. Roberts to Mr. Nyswanger of all his rights under the bond in payment of the account which he owed Keeler & Nyswanger is the transaction which I negotiated with Roberts; and the other matter which led to the giving of the bond from Nyswanger to Roberts was made all the same day, but after I had concluded my trans action with Roberts. The note was for $228; was not given when the assignment was given. It was given after the assignment was given, and when the bond from Nywanger to Roberts was given, and after the assignment was in my possession, and I had gone back to my office. There were two separate and distinct items of business transacted on that day. The business was conducted by myself, as attorney for Nyswanger, with Roberts, which led to the assignment by Roberts to Nyswanger in payment of the account; and the other, which led to the execution by Nyswanger to Roberts of the bond, and the execution of the note by Roberts to Nyswan ger; that is just the way it was. These transactions were separate and distinct transactions; entirely so. * * * As to the value of the property at the time of this transaction, August 14, 1882, it was about $350; improvements consisting of a small stable or barn, worth probably $150,—scarcely that. It was enclosed with a common board fence. Since that time Nyswanger has built a dwelling house, and some other improvements, of about $2,000. * * .* Roberts wanted to use the stable, and agreed to pay Nyswanger rent by the month, at the rate, as I remember, of about $2 per month; and that was the only part of the premises included in their conversation with respect to the $2 per month. * * * It was a bona fide, straight transaction between Roberts and myself, by which I gave him, for his interest in that land, this account of $228, without any reservation whatever, and, at that time he signed and executed the assignment, he understood it, and nothing else was ever talked between him and me, except that I was buying, absolutely and entirely, all his right under the bond." Defendant Nyswanger

testified in part as follows: "I came down town, and met Roberts, and he told me that he had paid the debt; that he had sold me the property; and that I would have to pay Hall $200 to perfect the title. * * * On the 14th of August, 1882, after obtaining Roberts' assignment, Roberts said the property was mine and wanted to rent the barn. I rented it to him that day for $2 per month. * * * About the 9th day of July, 1883, Roberts came to me and told me that he did not ask any fur-ther time on the property on the bond; that the property was mine, but he thought I ought to pay him $50 more on the property; that I got the property too cheap, and he could not raise the money to buy the property. * * * I asked him about the bond,—what he had done with it,—and he said he had it up at the court house; and I told Roberts that if he would go up and have that bond canceled of record, and bring it down to me I would give him $50. He said he would do it, but he said it was about noon and the boys would be gone to dinner, and he was in a hurry and would like to have the money right away." The evidence shows that Nyswanger paid the $50 to Roberts on that day, and that Roberts never canceled and delivered up the bond to the defendant; that about the time Roberts received the $50 Nyswanger began the erection of a $2,000 dwelling house on the premises, which was completed that season. F. Z. Hicks, on cross examination, testified as follows: "I made the assessment in May or June, 1883. I think I remember distinctly what Roberts told me at that time. He did not give me any property to list. He said he had none." James C. Sherman testified that Roberts offered the property to him for $50 above the amount necessary to pay Nyswanger in order to procure a reconveyance, and soon afterwards Roberts told him, at Cyr & Volin's store, that he ought to have taken the lots, because they were cheap, but that he was then too late, because he had sold the lots to Nyswanger. Charles Hayward testified that Roberts tried to sell him the lots in July, and that afterwards he made him an offer, and Roberts told him there he

had sold the lots to Nyswanger for more money. Jamed Hally testified that Roberts told him that he had sold the premises in controversy to Nyswanger. David R. Knull, who had a conversation with Roberts and Nyswanger in the month of July or August, 1883, testified as follows: ''I was commander of the Grand Army Post, and knowing that this dispute existed between two brothers of the post,—Roberts and Nyswayger—I was desirous of creating harmony between the brothers of the organization. I was told by Nyswanger his side of the story, and I thought I might bring peace and quietness between them by inquiring of Roberts and getting his side of the story.   *   *   *   He made a statement to me of what he thought was his rights in the matter.   I then asked him if Nyswanger had paid him the sum of money, which I understood to be $50.   Roberts said he did, and I then asked him if he did not intend to give Nyswanger a clear title when he received this  50.   He said he intended to— had intended to.   I then asked him if he was refusing to do so at the time the conversation took place.   He said that he had, after thinking the matter over and taking some advice, believed that he had some rights that he was not bound to sacrifice to Nyswanger;   *   *   *   that he had concluded, notwithstanding he had promised Nyswanger to turn over the papers, and give him a clear title to the property in dispute, he thought now he could do better than to do that thing.   *   *   *   Nyswanger testified that, at the time he was served with a notice that Roberts claimed the property, he had his dwelling house, which cost something over $2,000, upon the premises, though not entirely complete.   There was some plastering to be done.   Roberts or Morris never offered to pay him any of the $200 he had paid to Hall & Sons, nor the $228 grocery bill.   H. S. Hall testified that Roberts came to the bank, and told him to deed the property to Nyswanger; that he was owing him an account and wanted to settle it up.   The property was turned out in payment of that claim, as he understood it.   Roberts, after testifying that he received the $50 from Nyswanger, was asked by

counsel for plaintiff the following question: "Q. Well, you may state whether or not at that time, or at any other time, you ever agreed with Mr. Nyswanger to cancel that bond, and deliver it up. A. To the best of my recollection, I don't remember anything of that kind, that I am possible of. The word 'bond' may have come up, but, whether I told him I would give him the bond, I don't know anything about it. I took the money as a loan. Q. Did you ever, at any time, agree to pay rent for the stable on that property? A. No, sir; not to my recollection." Although Mr. Roberts testified that he assigned and turned over the bond for a deed as security for the payment of $228, we do not regard this testimony sufficient, under the law, when considered with all the other facts and circumstances in evidence, to defeat an assignment of his interest, absolute in terms, and authorizing the party holding the legal title to convey the same by warrantee deed to his grantee upon the payment of $200 in addition to the consideration mentioned in the assignment, for the exclusive use and benefit of said Roberts. Nor do we believe the evidence sufficient to support the finding of the learned court that the relation of mortgagor and mortgagee existed between Roberts and Nyswanger at the time the property was levied upon, and sold to the plaintiff at sheriff's sale. In our opinion the execution of the bond for a deed, and the note for $228, designed to indicate the amount necessary to repurchase the property, provided it was done at the time specified therein, was a transaction entered into after Nyswanger became the absolute owner of the property, and in no manner changed the nature of the transaction, nor the relation of the parties thereto. The recitals of the assignment itself, and the subsequent declarations of Roberts, when considered with the fact that Nyswanger paid for the property its full cash value, and proceeded to build thereon a dwelling house for himself and family at an expense of $2,000, leads us to conclude that a sale of the property was intended and understood by the parties, and by the assignment consummated; and as time was

made the essence of the contract for a resale, and Roberts was in default when he received the $50, it could not be regarded, in any event, as a payment for the property, as Roberts, at the time, had no interest therein; and as we view the transaction, the statute of frauds does not apply. We think the judgment should be reversed. The case is therefore remanded, with directions to the trial court to enter judgment in favor of appellant, Nyswanger, in accordance with this opinion.