### Susan F. Steele v. Frank Steele.

1. ABSOLUTE DEED—*when, not constructive mortgage.* Held, from the particular facts of this case, that a deed absolute on its face was so intended and was not given to secure advances made by the grantee to the grantor, and, further, that its execution was not induced by fraud.

2. SPECIFIC PERFORMANCE—*when, not decreed.* Specific performance will not be decreed where the bill of complaint is not framed with that relief in view.

Proceeding to redeem from alleged constructive mortgage. Error to the Circuit Court of Madison County; the Hon. PAUL MCWILLIAMS, Judge, presiding. Heard in this court at the August term, 1903. Affirmed. Opinion filed March 10, 1904.

THOMAS STALLINGS and BURTON & WHEELER, for plaintiff in error.

TRAVOUS, WARNOCK & BURROUGHS, for defendant in error.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was a "bill to redeem," by plaintiff in error against defendant in error, in the Circuit Court of Madison County. The case was tried on bill, answer, replication and evidence produced and heard in open court. The court found that the deed in question was intended by the parties as an absolute deed and not as a mortgage, and dismissed the bill. The parties will be designated hereafter as plaintiff and defendant.

The parties to this suit are mother and son. The mother

had bought a lot in Granite City, for which she paid $600. She undertook to improve the lot and for this purpose borrowed $2,100 from a building and loan association, which was secured by a mortgage on the lot. The principal improvement consisted of a double tenement house. This house was so placed that one-half of it stands on the north half of the lot and the other half on the south half of the lot. The entire improvement, including some incidental expenses, cost about $2,700. Defendant superintended the making of the improvements and contributed a part of the money used in paying for them, and when the house was completed moved with his family into the north half of it, and plaintiff with her daughter Frances, moved into the south half. Plaintiff was a widow somewhat advanced in years, and defendant and her daughter Frances were her only children.

On April 8, 1902, plaintiff executed and delivered two warranty deeds, conveying the lot in fee simple absolute, subject to the mortgage above noted. One of these deeds was to defendant for the north half of the lot, and the other was to the daughter Frances, for the south half. (There was a mistake in the description in the deed to the daughter, but that was corrected when discovered, and later the daughter deeded back to the mother.) This case involves only the north half of the lot, the part deeded to the defendant. On the same day the deeds were executed, but some hours later, plaintiff and defendant entered into an agreement as follows:

"This indenture made and entered into this 8th day of April, A. D. 1902, by and between Susan F. Steele, of Granite City, Illinois, party of the first part, and Frank Steele, of Granite City, Illinois, party of the second part, witnesseth : That the said party of the first part has this day conveyed to the said party of the second part the north half of lot No. eight, block No. seventy-six, of Granite City, Illinois, for the consideration of $1,600, and by reason of said conveyance of said premises to the party of the second part by the said party of the first part, the said party of the second part agrees that at any time on or before April 8, A. D. 1903, that the said party of the first part desires,

for a reasonable consideration in cash in hand paid by the said party of the first part to the said party of the second part, he will convey said premises to said party of the first part by warranty deed subject to any mortgage that may be on the premises."

About two months after the execution of the deed and agreement, plaintiff tendered to defendant $500, and demanded that he deed 'the property back to her. He demanded a larger sum of money and she refused to pay any more. He offered to leave it to arbitrators to appraise the value of his interest and she refused to accept that proposition. He refused to accept the $500 tendered and reconvey to her, and she filed her bill "to redeem."

The bill alleges that on April 8, 1902, plaintiff owed defendant the sum of $482.50, with interest thereon at the rate of five per cent, to be paid on or before April 8, 1903, and that to secure this sum, the deed above mentioned and the agreement above quoted were executed; and, "alleges that said deed was not intended as an absolute conveyance, but that it was expressly agreed and understood between complainant and defendant that said premises were to be held by defendant simply as security for the payment of the said sum of money and interest, and that on payment of the same the defendant would reconvey to complainant." The bill also avers that plaintiff was induced to sign the agreement by fraud and that the clause in the agreement " for a reasonable consideration in cash, in hand paid," was agreed and understood by the parties to mean the sum of $482.50, with accrued interest thereon.

The prayer of the bill is, that an account may be taken of the amount due "for the principal sum and interest aforesaid," and of rents received by defendant and that upon payment of the sum found due from plaintiff to defendant " in respect of said principal sum and interest," that defendant be decreed to reconvey and deliver up possession.

In his answer defendant denies that the deed was intended as a mortgage, but avers that it was intended as a conveyance in fee, absolute; alleges that in pursuance of an agreement with plaintiff he aided and assisted her in building

the house upon the understanding that she would convey to him the north half of the premises upon completion of the house; that it was always the understanding that he should have the north half of the house and that the deed was made in pursuance of this understanding and agreement. He admits the making of the contract of April 8, 1902, above quoted; denies that plaintiff was induced to sign it by fraud; denies that he agreed to reconvey for $482.50, with interest; denies that it was agreed or understood that the words "for a reasonable consideration cash in hand," should mean $482.50 with interest, and avers that the true consideration is expressed. He states that it was understood at the time the agreement was signed, that the amount of the consideration to be paid him for a reconveyance should be fixed by three disinterested persons.

At the time the lot was purchased and during the time the improvements were being made, plaintiff and her daughter lived in Missouri and defendant with his family lived in Granite City. The lot cost $600 and was paid for by plaintiff. It was the purpose to borrow from the building and loan association all the money to pay for the improvements, but the association would not loan that amount on the property. Plaintiff had not sufficient money to complete the work. The amount borrowed was expended, she furnished $150 in addition to what she had paid for the lot, and defendant superintended the work and furnished the balance of the money necessary to complete the work and pay some dues and expenses. When the house was ready to occupy defendant moved into the north half, and soon thereafter plaintiff and her daughter moved into the south half.

The contention of defendant is, that when plaintiff found that she could not borrow all the money needed and that she did not have enough of her own, she agreed with him that if he would furnish the balance she would deed him the north half of the property subject to one-half of the mortgage, for that amount of money and his time and trouble in superintending the making of the improvements. He claims he furnished all told $554.

Plaintiff denies that she agreed to deed him any part of the property, and contends that the money he furnished was a loan to her which she was to repay when she could; that she let him occupy one part of the north half of the house free of rent because he had not charged her anything for looking after the business, and she claims that he only furnished $482.50.

The testimony of Mr. H. H. Willoughby, the attorney who drew and acknowledged the deed and contract, is apparently the most reliable piece of oral evidence in this record. The substance of his testimony is: "On the 8th day of April, 1902, I was requested by defendant to go down to the house and make out two deeds. I took two blanks and my notary seal and went down there. When I got there I told Frank I would like to speak to his mother privately before I went to work to write up the deeds, and I was invited in the front room; directly Frank's mother came in, and I asked her then if she desired to deed this property to Frank and her daughter, and she said yes. I asked her if she knew what such actions as that might result in and she said yes, she did. I said, many times when old persons deed their property away to their children and when the time comes that they need it the most, they are left out and have nothing to support them, and at that time she said that she desired to give to Frank the north half and to her daughter the south half of the lot, and then I prepared the deeds. * * * Mrs. Steele signed them and I acknowledged them right then and there. After the deed was signed and Frank got his deed, Miss Frances Steele came in off the porch. That was her first appearance in the room after we commenced transacting any kind of business. When she came in she had the deed that was made to her and she * * * (said) Frank ought to give them a contract to reconvey that property back." Miss Steele went back on the porch again, and Frank and his mother talked about the matter, "and they agreed on one year's time; and then came up the matter of consideration, and Frank said, ' If you want it back, I will transfer it back to you for a reasonable consideration inside of a year when

you want to buy it back,' and they agreed upon that." It was agreed, that "If they could not agree upon a reasonable consideration in case he sold back the property to his mother, that they were to call in three disinterested persons to decide what was a reasonable consideration, and each was to abide by their decision. I went back to my office and wrote out this agreement, * * * and went back to Mrs. Steele's house and then Frank and his mother signed it." Nothing was said about the deed being made to secure Frank for advances he had made for his mother. "The sum of $482.50 was never mentioned in my presence." Mrs. Steele " told me in the room there she always intended to give the south half of the property to her daughter and the north half to Frank." On cross-examination this witness stated, "there was nothing said about the amount he had paid her, in my presence," and he was then asked: "Q. If Mrs. Steele was to have the right to buy this property back, or have it reconveyed back to her within a year, and Frank, so far as you know, paid nothing for it; why, then, what is your explanation of this reasonable consideration? A. Frank spoke up at that time and said, the property may be worth a great deal more when she wants to buy it back than it is now; and he further said it might be worth less when she wants to buy it back than it is now, and under those conditions it was agreed by Mrs. Steele and Frank, that it should be a reasonable consideration placed in the agreement."

We are of opinion that the evidence warrants the finding that the deed was intended by the parties as an absolute deed and not as a mortgage, and that the plaintiff was not induced to sign either the deed or the agreement by fraud. And in this connection it must be borne in mind that the bill in this case is a "bill to redeem," and not a bill for specific performance of the contract. "When a complainant in chancery seeks a specific performance, his bill must be framed with that in view." Pitts v. Cable, 44 Ill. 103; Hanford v. Blessing, 80 Ill. 188 (191).

The decree of the Circuit Court is affirmed.

*Affirmed.*