RESTHAVEN MEMORIAL CEMETERY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98427. Promulgated February 19, 1941.

*Max Waldman, Esq.*, for the petitioner.
*T. F. Callahan, Esq.*, for the respondent.

**OPINION.**

HARRON: The basic question is whether the transactions involving the execution and delivery of deeds to cemetery lots and the issuance of repurchase certificates constituted sales of such lots or loans secured by mortgages on such lots.

On its corporation income and excess profits tax returns for its fiscal years ended November 30, 1935 and 1936, petitioner included in income $12,240 and $25,380, respectively, the gross amounts received in connection with the transactions in question. In a protest filed with respondent, petitioner contended that the amounts of $12,240 and $25,380 should not have been included in income on its returns for the taxable years because the transactions in question constituted loans. In the deficiency notice respondent denied these contentions on the ground that the transactions in question were sales. In its petition petitioner alleges that respondent erred in including in petitioner's income for its fiscal years ended November 30, 1935, and 1936, respectively, $12,240 and $25,380 "payments received from customers upon the purchase of 'Repurchase Certificates.'"

Also, in its returns for the taxable years, petitioner deducted as "interest" $4,948.14 and $5,283.28, respectively, amounts paid as option fees on the repurchase certificates held by its perpetual care and endowment fund, and $1,142.95 and $2,199.40, respectively, amounts paid as option fees on repurchase certificates held by individuals. Respondent disallowed the deduction of the first two amounts (paid on the certificates held by the perpetual care and endowment fund), on the ground that such amounts were "paid to repurchase lots and should be capitalized as it will be the cost of such lots as may be acquired at the end of the eight-year period referred to in the repurchase certificate." In an amended answer respondent alleges that he erred in not also disallowing the deductions of the latter two amounts paid on repurchase certificates held by individuals, and he asserted a claim for increased deficiencies for the taxable years, under section 272 (e) of the Revenue Acts of 1934 and 1936, increasing the deficiencies to the amounts set forth at the outset.

Petitioner contends in its brief that the transactions in question were loans, that the amounts received by petitioner in the taxable years in connection with the transactions constituted borrowed moneys and should not be included in its taxable income for those years, and that the amounts paid by petitioner in the taxable years on the repurchase certificates constituted interest on borrowed moneys and were deductible in those years. Petitioner relies especially on *United National Corporation*, 33 B. T. A. 790.

On the other hand, respondent contends that the transactions in question were sales, that the amounts received by petitioner in connection with the transactions were properly included in petitioner's income for the taxable years, and that the amounts paid by petitioner in the taxable years on the repurchase certificates did not constitute interest on borrowed moneys and were not deductible. Respondent relies on *Irving Fisher*, 30 B. T. A. 433; and *William M. Davey*, 30 B. T. A. 837.

In determining whether the transactions in question were actual sales of cemetery lots or loans secured by mortgages on the lots the governing factor is "the intention of the parties and this is to be gathered not only from the instruments themselves but all the attending facts and circumstances." *United National Corporation, supra; Tucker* v. *Witherbee,* 130 Ky. 269; 113 S. W. 123; *Vaughn* v. *Smith,* 148 Ky. 531; 146 S. W. 1094; Jones, Mortgages (8th ed.), sec. 309. To determine the intention of the parties all instruments executed in connection with a deed absolute on its face are to be construed as a part of the deed. Jones, Mortgages (8th ed.), sec. 312, 315. "In order to convert what appears to be a conditional sale into a mortgage, the evidence should be so clear as to leave no doubt that the real intention of the parties was to execute a mortgage; otherwise the intention appearing on the face of the deed ought to prevail." Jones, Mortgages (8th ed.), sec. 311. Parole evidence is admissible to show that a deed absolute on its face was intended as a mortgage. *Peugh* v. *Davis,* 96 U. S. 322; *Hayward* v. *Mayse,* 1 App. D. C. 133. However, the parole evidence must be clear and satisfactory. *Hayward* v. *Mayse, supra; Stokeley* v. *Flanders,* 128 S. W. 608; and it is not sufficient that the parole evidence "throw doubt upon the matter or * * * raise suspicion as to the character of the transaction." *Hayward* v. *Mayse, supra.* There is a presumption that an absolute deed is just what it purports on its face to be. Jones, Mortgages (8th ed.), sec. 409. Petitioner has the burden to establish the transactions in question as loans "not only because respondent has officially determined that the transactions were sales but also because they are expressly so designated in the contracts of the parties thereto." *Irving Fisher, supra.* It should also be pointed out that an essential requisite of a mortgage is a debt. Jones, Mortgages (8th ed.), sec. 316; and that an obligation of the seller to repurchase the property sold does not *per se* create a debt owing from the seller to the purchaser. *William M. Davey, supra.*

In our opinion, the transactions in question were sales. The deeds to the lots were absolute on their faces. The agreement contained in the repurchase certificates was stated to be made between petitioner and the *owner* in consideration of the *purchase* of certain cemetery property. The monthly payments of $1 per lot were stated in the certificates to be for the privilege of retaining an *option* on the lots. The certificates expressly stated that petitioner's "right and/or obligation to repurchase and to pay option charges shall forthwith cease and terminate, upon interment in or erection of a monument upon any Unit covered by this agreement, and as regards said Unit upon which interment has taken place or a monument has been erected, said agreement shall be deemed to have been fully discharged." This

provision in particular indicates that it was not intended that petitioner was to retain any right of redemption in the lots involved and is entirely inconsistent with petitioner's theory that the transactions in question were loans secured by mortgages on the lots. Each certificate further provided that it contained the entire agreement between petitioner and the owner and that "both parties agree that no promises have been made and there are no oral understandings, representations or agreements between the parties hereto not herein set forth." It is true that the certificates provided that petitioner was obliged to repurchase the lots sold at the selling prices from the owners at the expiration of eight years from the issuance of the certificates if the owners desired that petitioner do so and also that petitioner was entitled to repurchase the lots prior to the expiration of the eight-year period at prices slightly above the selling prices. However, the existence of this obligation and right to repurchase was entirely consistent with the theory that the transactions in question were sales on conditions subsequent. *William M. Davey, supra.* The peculiar phraseology of the repurchase certificates, read together with the absolute deeds, is entirely inconsistent with petitioner's theory that the transactions in question were loans secured by mortgages on the lots and furnishes strong evidence that the parties intended that the transactions in question were conditional sales. *Hanford* v. *Blessing*, 80 Ill. 188, 189; Jones, Mortgages (8th ed.), sec. 312.

Moreover, the evidence introduced by petitioner to show that the transactions in question were loans secured by mortgages on cemetery lots is far from satisfactory and at most raises a mere doubt or suspicion.

The testimony of petitioner's president lends but slight support to petitioner's theory. He was asked many questions which were improper because calling for his conclusion rather than a statement of fact. He testified that in conducting petitioner's business it was necessary to sell property in advance of need; that in the taxable years income was derived from the sale of cemetery lots and from the sale of "securities"; that the sale of each repurchase certificate represented a "unit sale." Such fragmentary testimony indicates that he understood that sales were made by the completion of the transactions involving the issuance of the repurchase certificates and deeds to cemetery lots. He also testified that it was petitioner's intention "to borrow money for eight years"; that each certificate sold was "secured" by a deed to property; that accounts were set up on petitioner's books described as "loans." The books were not introduced or offered in evidence and consequently the record does not show how the real estate accounts were charged for the issuance

of deeds to cemetery lots. One witness, a salesman, testified that he sold units (repurchase certificates) for investment to persons interested in a definite interest yield. All of such testimony taken together does not show clearly that the transactions were other than of the type defined by the terms of the repurchase certificates themselves.

There is no ambiguity in terminology. The transaction on the face of the "Deed to Burial Lot" and the "repurchase certificate" was clearly a transaction constituting a sale of a cemetery lot with simultaneous execution of a repurchase agreement as part of the consideration of the sale of the cemetery property. The repurchase agreement gave petitioner an option to repurchase the property within eight years, provided petitioner made payment of stated monthly "option fees." The agreement created an obligation in petitioner to repurchase upon certain subsequent conditions the most important of which was preservation of the cemetery property in a condition for resale by the "Owner", i. e., free from use as burial ground. It was outside the control of petitioner how the "Owner" would use the property deeded to him and covered by a repurchase agreement. Under such circumstances testimony that petitioner's sole interest was " to borrow money for eight years", by virtue of the transactions in question, does not square with the realities of the transactions which were carried into effect. Under the facts, under the terms of the repurchase agreement, under the circumstances of delivery of absolute deeds to cemetery lots to persons described as purchasers, who in fact paid cash consideration, the realities of the transactions are that they were a method of selling cemetery property in advance of need, with a limited privilege in the purchaser to sell the property back to petitioner within eight years, as well as with a right in petitioner to repurchase, if option fees were paid, as required.

Petitioner has not introduced clear and convincing evidence that the transactions in question did not constitute sales. Clearly on the face of the transactions they did not involve loans to petitioner. *Irving Fisher, supra.* As was stated in the *Fisher* case, and equally applicable here, "We are unable to find from anything dehors the contract that the parties intended to and actually did contract only for a loan. As between the petitioner's deliberate writing to express his intention and his oral statement of his intention, the writing must prevail."

Mention should be made of oral testimony of two witnesses for petitioner other than petitioner's president and a salesman. Both were aged women. One stated that her memory was leaving her; that she was getting old. Each appeared to understand from the terms of the agreement relating to a monthly payment of the "option

fee" that petitioner was obligated to pay that. It is true that petitioner did obligate itself to pay option fees, but such obligation does not suffice to characterize such type of payment as a payment of "interest" as that term is understood for questions relating to statutory tax deductions. Petitioner's selection of these two individuals, from all of its list of owners of cemetery lots, which must have included persons having a more apparent understanding of the terms and meaning of ordinary business transactions, made petitioner's presentation of its case difficult. In a most real sense petitioner handicapped itself in its choice of witnesses whose testimony proved to be deserving of little weight. These witnesses, frail in every respect, were asked questions, repeatedly, which called upon them to make conclusions. While it is conceivable that petitioner could have presented its case with greater strength if it had called more capable witnesses, or if questioning had been more skillful, it is nevertheless exceedingly doubtful if even more competent witnesses could testify in a way by which the terms of the written agreement involved could be shown to have been intended to be otherwise than is stated in writing. Accordingly, as to petitioner's prayer in its brief that, in the event the present record leaves doubt as to the correctness of its contentions, petitioner should be afforded a further hearing, the opinion is here expressed that petitioner has had its day in court and no useful purpose would be served by opening the record for further hearing.

It is held that the transactions in the taxable years were sales; that the net receipts therefrom were properly included in taxable income; that the amounts paid as option fees are not deductible as interest paid on indebtedness. The payments were made "for the privilege of retaining" options to repurchase the lots sold and constituted capital expenditures. Respondent is sustained on disallowance of the deductions, as disallowed in the notice of deficiency and by the amended answer.

It is not clear whether or not respondent has computed petitioner's taxable income in each year with allowance for deductions from gross receipts from sales of cemetery lots in question for cost of the lots to petitioner. It has been stipulated that the lots sold in the respective years had a cost to petitioner of $4,162.96 and $8,388.09, and that net gain, income, from the sales was $8,077.04 in 1935 and $16,991.91 in 1936. To remove doubt the deficiencies should be recomputed under Rule 50.

*Decision will be entered under Rule 50.*