## CHARLES BEARSS *et al.*

*v.*

## THOMAS P. FORD.

*Filed at Ottawa November 20, 1883.*

1. MORTGAGE—*whether an absolute deed with agreement for repurchase, or a mortgage.* Where a debtor whose indebtedness is secured by deeds of trust, and to avoid a threatened foreclosure, conveyed the mortgaged premises to his creditor by a quitclaim deed, containing a proviso that if he should pay a certain sum (being the amount due from him, with interest and back taxes,) within one year, with interest thereon, the grantee should reconvey the premises to him, and the grantee also executed to the grantor a lease of the premises for one year, at a rental equal to the interest on the debt, payable monthly, which monthly rental, it was recited, was to be deemed and applied as interest, under the conditions of the quitclaim deed, it was *held,* that the transaction was but a mortgage for the payment of the indebtedness of the grantor, and was not an absolute sale and extinguishment of, the prior indebtedness.

2. Whether a deed for land is an absolute sale and conveyance, with an agreement for a repurchase by the grantor, or a mortgage to secure the payment of money, is a question of fact, depending upon the intention of the parties to it at the time of its execution.

3. SAME—*when deed absolute in form is given as a further security, creditor may still enforce his prior securities.* Where a deed absolute in

form, with a clause for repurchase, is given in consideration of an existing mortgage indebtedness, the court is more inclined to treat it as a mortgage than where given upon an original advance, and when so treated the new mortgage will not be regarded as a substitute for the former security, unless the intention to that effect is manifest; and in such cases the original mortgage may be foreclosed, notwithstanding the giving of the new one.

4. If the new instrument operates as a satisfaction or extinguishment of the mortgage indebtedness, it will be regarded as a sale and conveyance of the equity of redemption, with an agreement for a repurchase; but if it does not so operate, such new instrument will be treated as an additional security for the debt,—or, in other words, as an additional mortgage,—and the creditor may enforce either one.

5. SAME—*deed—when a mortgage, continues so.* Parties can not make a conveyance of land, absolute in form, a security for the payment of money by a given day, and if payment is not then made, have it treated as an absolute sale and conveyance. Every deed takes effect from delivery, and its character thereby becomes at once fixed. If a mortgage when delivered, it continues so until the right of redemption is barred by some of the modes recognized by law. The parties can not, even by express stipulation in a mortgage, cut off the right of redemption.

6. EVIDENCE—*extrinsic, to show intention of parties by their written contracts.* In arriving at the intention of the parties in executing a written contract, the instrument itself must first be looked to, for, as a general rule, where there is nothing equivocal or ambiguous in its terms it should be given effect according to the plain and obvious import of the language used, unless to do so will lead to unreasonable or absurd consequences.

7. SAME—*exception to rule excluding parol evidence to explain.* There is a well established exception to the general rule by which parol evidence is not admitted to vary or explain a written contract, which permits the showing of a deed plain and unambiguous in its terms, and absolute on its face, to be a mortgage, or mere security for the payment of money, or the performance of some other act or duty. So an instrument substantially in the form of a mortgage may, in like manner, be explained, with a view of arriving at the real intention of the parties.

8. CONTRACT—*construction, when several writings must be construed together.* In construing whether a conveyance is an absolute deed, or a mortgage, or security for the payment of money, it must be considered in connection with a lease accompanying it, from the grantee to the grantor, when both are parts of the same transaction. In such case they will be construed as though they were different parts of the same instrument.

9. ERROR—*in admission of evidence, afterwards cured.* If the admission of a deed of trust in evidence, without any explanation as to an erasure and interlineation, except a memorandum of the officer taking the acknowledgment that "all erasures and interlineations" were made before signing, is

error, it will be cured by the subsequent admission of evidence giving the explanation desired, and for the want of which the deed was objected to.

10. ESTOPPEL—*by deed, from denying validity of prior deed.* Where a deed of trust showed on its face that the name of the original trustee was erased, and that of another inserted, and the grantors afterwards gave a new deed to their creditor, in which 'is expressly recognized the validity of the trust deed, the grantors therein will be estopped from raising any question as to the authenticity or binding force of the trust deed.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. C. W. BROWN, for the appellants:

Any material alteration of an instrument, made without the assent of the party having executed it, will have the effect of avoiding it. *Gardner* v. *Harback,* 21 Ill. 129; *Prettyman* v. *Goodrich,* 23 id. 330; *Kelly* v. *Trumbull,* 74 id. 428; *Wyman* v. *Youmans,* 84 id. 403; *People* v. *Organ,* 27 id. 27,

A party who receives a paper interlined in a material part must assume the responsibility of explaining it afterward, when claiming the benefit of the paper, the presumption of law being that the interlineation was made after its execution. *Hodge* v. *Gilman,* 20 Ill. 437.

A sale with an agreement for a repurchase comes very near in form and substance with a mortgage, but the rights of the parties under these instruments are very different. A mortgage may be redeemed at any time before foreclosure, while there can be no redemption from a conditional sale after the day appointed. 1 Jones on Mortgages, sec. 262, note 4.

An absolute deed delivered in payment of a debt is not converted into a mortgage merely because the grantee therein gives a contemporaneous stipulation binding him to reconvey on being reimbursed, within an agreed period, an amount equal to the debt and the interest thereon. If the conveyance extinguishes the debt, and the parties so intend, so that

a plea of payment would bar an action thereon, the transaction will be held an absolute sale notwithstanding. 1 Jones on Mortgages, sec. 267; *Turner* v. *Kerr,* 44 Mo. 429; *Farmer* v. *Grose,* 42 Cal. 169; *Baugher* v. *Merryman,* 32 Md. 185; *Weathersly* v. *Weathersly,* 40 Miss. 462; *Morrison* v. *Brand,* 5 Daly, (N. Y.) 40.

The agreement to reconvey the lands is not necessarily, either in law or in equity, a defeasance. 1 Jones on Mortgages, sec. 260, 261, and cases cited in note.

If an absolute conveyance be made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land to the grantor upon receiving a certain sum within a specified time, does not create a mortgage, but a conditional sale, and the grantee holds the premises subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement. 1 Jones on Mortgages, sec. 265, and cases cited in note; *Pitts* v. *Cable,* 44 Ill. 103.

Although the securities are not surrendered, if the debt is extinguished a simple right to repurchase does not make the conveyance a mortgage. *West* v. *Hendrix,* 28 Ala. 226; *Baxter* v. *Wiley,* 9 Vt. 276; *Todd* v. *Campbell,* 32 Pa. St. 250; 1 Jones on Mortgages, sec. 326.

Messrs. HILL & DIBELL, for the appellee:

A mortgage is a conveyance of land as a security for the repayment of money borrowed, with a proviso that such conveyance shall be void on payment of the money, etc., as stipulated. 2 Bouvier's Law Dict. "Mortgage," 3; 1 Jones on Mortgages, sec. 241.

A deed with a bond or agreement to reconvey the estate upon payment of a certain sum of money, has always been held to constitute a legal mortgage. 1 Jones on Mortgages, sec. 244.

If a conveyance of land be made in fee, and the grantee gives back a bond to reconvey upon repayment of the consideration money, and to permit the grantor to occupy the premises at a rent equal to the interest on the consideration, these are parts of one and the same transaction, and constitute a mortgage. 1 Jones on Mortgages, sec. 273; *Preschbaker* v. *Feaman,* 32 Ill. 482; *Ewart* v. *Walling,* 42 id. 453; *Woodward* v. *Pickett,* 8 Gray, 617; *Wright* v. *Bates,* 13 Vt. 341.

The fact that the evidences of the indebtedness are not given up or cancelled on the debtor's making a conveyance, is strong evidence that the conveyance is a mortgage. *Jarvis* v. *Frink,* 14 Ill. 396; *Dunphy* v. *Riddle,* 86 id. 28; *Sutphen* v. *Cushman,* 35 id. 196; *Rue* v. *Dole, ante,* p. 275.

The taking of a second mortgage on the same land is no waiver of the original mortgage. 2 Jones on Mortgages, sec. 929; *Gregory* v. *Thomas,* 20 Wend. 17; *Hill* v. *Beebee,* 3 Kern. 562.

A conveyance by mortgagor to mortgagee of the mortgaged premises, even in payment of the mortgage debt, extinguishes and releases, or does not extinguish and release, the mortgage lien, according to the intention of the mortgagee, if that is shown, and if not, then as may be for the interest of the mortgagee. 4 Kent's Commentaries, 102; 2 Washburn on Real Prop. 180–182, secs. 1, 2; 1 Jones on Mortgages, secs. 857, 870; *Campbell* v. *Carter,* 14 Ill. 286; *Weiner* v. *Heintz,* 17 id. 262; *Fitts* v. *Davis,* 42 id. 391; *Edgerton* v. *Young,* 43 id. 468; *Huebsch* v. *Scheel,* 81 id. 285; *Richardson* v. *Hockenhull,* 85 id. 124; *Shaver* v. *Williams,* 87 id. 470; *Worcester National Bank* v. *Cheney,* id. 614; *Ætna Life Ins. Co.* v. *Corn,* id. 170; *Young* v. *Morgan,* 89 id. 199; *Meacham* v. *Steele,* 93 id. 143; *Campbell* v. *Trotter,* 100 id. 281.

There is no presumption, from inspection, when, or by whom, or for what purpose, the instrument has been altered. *Reed* v. *Kemp,* 16 Ill. 449; *Gillett* v. *Sweet,* 1 Gilm. 489; 1 Greenleaf on Evidence, sec. 564, note, sec. 566, note 1.

Mr. Justice Mulkey delivered the opinion of the Court:

On May 22, 1874, the appellant Charles Bearss borrowed of Thomas P. Ford, the appellee, $1200, giving his note therefor, and to secure the payment thereof executed a deed of trust to T. H. Hutchins upon a tract of land in Will county, this State, the same being Bearss' homestead. On the 28th of December following, Ford made another loan of $290.36 to Bearss, for which he and his wife executed to Ford their promissory note, and a deed of trust to Elbert T. Chase, on the same property, to secure the loan. Both the above notes bear interest at the rate of ten per cent per annum, payable semi-annually, and by their terms matured on the 22d of May, 1879. These trust deeds contained the usual clause that if default was made in the payment of the interest, or any part of it, according to the terms of the note the whole of the principal and interest should thereupon become due and payable. In April, 1878, a part of the interest and taxes on the premises being in arrears, Ford was threatening to foreclose, when negotiations opened between him and Bearss, resulting, after some delay, in the following arrangement: Bearss and wife were to execute a conveyance of the premises to Ford, with a proviso in it that if Bearss should, on or before the first of July, 1879, pay the amount of the two trust deeds, interest, back taxes, etc., the conveyance was to be void, and Ford was to reconvey to Bearss. On the other hand, Ford was to execute to Bearss a lease of the premises from the first day of July, 1878, to the first of July, 1879, at an annual rental of $161.88, to be paid in equal monthly installments, being $13.49 per month. These papers were accordingly made out, and placed in the hands of C. W. Brown, the attorney of Bearss, with the understanding he was to hold them until the first of July, 1878, so as to afford Bearss an opportunity, in the meantime, of paying Ford the amount of interest and back taxes due under the trust deeds,

in which event Brown was not to deliver them at all, but if Bearss failed to make such payment, then the lease and deed were to be delivered to Ford. Bearss having failed to make payment by the first of July, as contemplated by the above arrangement, Ford sent Hutchins for the deed and lease, and they were delivered to him by Brown about five o'clock in the evening. On examination Ford found there was no release of the homestead in the body of the deed, and for that reason returned the papers next morning to Brown's office, from whence they had been taken the evening before, and were left there for Bearss, who declined to receive them or to execute a new deed with waiver of homestead, and thereupon Ford filed the present bill to foreclose the two deeds of trust. There was a hearing of the cause upon the merits in the circuit court of Will county, resulting in a decree in favor of appellee, which, on appeal to the Appellate Court for the First District, was affirmed, and the case comes here from the latter court for review.

The most important question presented by this record relates to the legal effect of the deed executed by Bearss and wife, in pursuance of the arrangement entered into between him and Ford in April, 1878, as heretofore stated. It is contended by appellee that the facts proven do not show a valid delivery of that instrument, but that, conceding a sufficient delivery is shown, it is in legal effect nothing more than another mortgage to secure the same debt. Appellants maintain the negative of both these propositions, and insist the deed in question was, and is, an absolute sale and transfer of the estate, and not a mere security for a prior debt, and that the condition contained in it is simply an 'undertaking or covenant on the part of the grantee to resell to the grantor, upon specified terms, within a limited time.

Assuming, for the purposes of the argument, the evidence shows a sufficient delivery of the instrument in question, (a matter about which we express no opinion,) we shall proceed

at once to the consideration of the inquiry, was the deed in question an absolute sale and conveyance with an agreement for a repurchase by the grantor, or was it a mortgage? The answer to this question, of course, depends upon what was intended by the parties to it at the time of its execution. In arriving at the intention of the parties the instrument itself must be first looked to, for, as a general rule, where there is nothing equivocal or ambiguous in the terms of a written instrument it should be given effect according to the plain and obvious import of the language used, unless to do so would lead to unreasonable or absurd consequences. A well established exception to this general rule is found in the law of mortgages, which permits the showing of a deed plain and unambiguous in its terms, and absolute on its face, to be a mortgage or mere security for the loan of money, or for the performance of some other act or duty. Yet no question of that kind is presented in this case, but rather the counterpart of it, for here the instrument under consideration is substantially in form a mortgage, and the question is, may it nevertheless be shown to be in legal effect a different kind of instrument? However this may be as a general proposition, we are of opinion, under the circumstances of this case, the whole subject is open to inquiry, with a view of arriving at the real intention of the parties.

In looking at the deed in question we must consider it in connection with the lease accompanying it, as both are parts of the same transaction, and must therefore be construed as though they were different parts of the same instrument. The deed itself bears date April 30, 1878, and recites that Bearss and wife, as parties of the first part, for the consideration of $1619.66, "have remised, released, aliened and quitclaimed," unto Ford and his heirs, all their right, title, etc., in and to the premises in question; that the consideration of the deed is the amount of indebtedness secured by the two trust deeds in controversy, and that the convey-

ance is made on account of default in the payment of said indebtedness, and to save the expenses of foreclosure. Then follows the *habendum* clause, "to have and to hold the same," etc., "upon condition, however, if said party of the first part shall, on or before the 1st of July, 1879, pay, or cause to be paid, by themselves or their heirs and assigns, said sum of $1619.66, with interest thereon at ten per cent per annum from July 1, 1878, together with all taxes which are or may be levied upon the said premises, with ten per cent interest if said taxes are paid by party of second part, then this deed to be void; and said party of second part agrees, for himself and wife, to execute to party of first part a quitclaim deed for said premises upon compliance with said condition." The lease accompanying this deed is very short, and outside of the fact of making the lease, it contains nothing that has any special bearing on the question in hand, except the last clause, which is as follows: "It (the lease) further witnesseth, that said monthly rental, as paid, is to be deemed and applied as interest, under the conditions of a quitclaim deed from said Bearss and wife to said Ford for said premises, bearing date April 30, 1878."

As already indicated, if we leave out of view one or two expressions in the deed, it is unquestionably in form a mortgage, and had it been given upon an original advance of money, the fact of its being a mortgage would hardly have been questioned; and yet it must be conceded that courts, in construing instruments of this kind, when the consideration is an existing mortgage indebtedness, are more inclined to treat them as mortgages than when given upon an original advance, and when so treated they will not be regarded as a substitute for the former security, unless the intention to that effect is manifest, and in such cases the original mortgage may be foreclosed notwithstanding the giving of the new one, hence the principle "once a mortgage always a mortgage," has become a leading fundamental doctrine of the law of mortgages.

The most satisfactory, and as a general rule the controlling, test in cases of this kind is, does the giving of the new instrument operate as a satisfaction or extinguishment of the mortgage indebtedness? If it does not, such new instrument will be treated as an additional security for the debt,—or, in other words, as an additional mortgage; but if otherwise, it will be regarded as a sale and conveyance of the equity of redemption with an agreement for repurchase.

Testing this case by the rule suggested, we have no hesitancy in holding the so-called quitclaim deed was a mere additional security, and not an absolute conveyance of the property. We are led to this conclusion by a number of considerations: First, the instrument contains no provision that it shall operate as any extinguishment or satisfaction of the mortgage debt; second, we see nothing in it looking to, much less providing for, a surrender to Bearss of the notes and prior trust deeds,—the evidences of such indebtedness; third, we find nothing in the provisional agreement between the parties, under which the deed and lease were executed, requiring the surrender or cancellation of the notes and trust deeds; and, finally, the lease in express terms recognizes the existence of the mortgage debt after the period fixed for the delivery of these instruments, viz., the 1st of July, 1878.

As already shown, the lease in express terms provides the monthly rental of the premises shall be applied as interest, under the deed of that date, which conclusively shows the parties did not intend, at least for the time being, to extinguish the mortgage debt, otherwise the rent could not be applied as interest. Interest on what? Manifestly, the old mortgage indebtedness, for there was no other indebtedness to which that provision of the lease could apply.

Looking at the terms of these instruments in the light of all the circumstances disclosed by the evidence, we are satisfied the object of the parties in executing them was not to satisfy or extinguish the mortgage indebtedness, but to con-

tinue the right of redemption until the 1st of July, 1879,— and this is wholly inconsistent with the hypothesis that the instrument in question was an absolute deed. The parties may have intended, and doubtless did intend, that if the premises were not redeemed before the 1st of July, 1879, it should then become so in order to avoid the expenses of a foreclosure. But it is evident that parties can not, by mere agreement, change the law of the land. (Dicey on Parties, 37, 38, side. page.) Every deed or other instrument takes effect from its delivery, and its character thereby becomes at once fixed. It can not, after such delivery, be one thing to-day and another to-morrow. If a mortgage when delivered, it continues to be such until the right of redemption is barred by. some of the modes recognized by law. Hence nothing is more firmly established in the law of mortgages than that it is not competent for the parties, even by express stipulation, to cut off the right of redemption, and to permit them to make such an instrument an absolute deed upon some future contingency, would simply be cutting off the right of redemption, which, as we have just seen, can not be done. 2 Jones on Mortgages, sec. 1039, *et seq.*

After a very careful consideration of the whole case we are satisfied the law is with the appellee on this question, and without entering upon any general review of the cases we will content ourselves with calling attention to the following authorities in support of the conclusion reached: 1 Jones on Mortgages, sec. 273; *Preschbaker* v. *Feaman,* 32 Ill. 482; *Ewart* v. *Walling,* 42 id. 453; *Croff* v. *Ballinger,* 18 id. 203; *Jarvis* v. *Frink,* 14 id. 396; *Sutphen* v. *Cushman,* 35 id. 196; *Dunphy* v. *Riddle,* 86 id. 28.

It appears in the junior trust deed of the 28th of December, 1875, as originally written, the name of T. H. Hutchins, the officer before whom the acknowledgment was taken, was inserted as trustee, and that while in the act of taking the acknowledgment, or immediately afterwards, it occurred to

him that by reason thereof he could not properly take the acknowledgment, whereupon he struck his own name out, and inserted in its stead that of E. T. Chase. Mrs. Bearss claims that the alteration was made without her knowledge or consent, and after she had left the house where it was taken, though she concedes she was called by her husband and told something was wrong, and requested to come back, and he admits the change was made with his consent; but she and her husband both state she refused to come back. Hutchins, the officer, swears: "My best recollection is that I called to Bearss and wife, and informed them that the change was necessary. The change was then made without objection from anybody." After all this had occurred the officer's certificate was made out in due form, and we think, under the authorities, it is, of itself, entitled to more weight than the testimony by which it is attacked. *Fitzgerald* v. *Fitzgerald,* 100 Ill. 385; *Strauch* v. *Hathaway,* 101 id. 11; *Warrick* v. *Hull,* 102 id. 280.

When this deed was offered in evidence, it was objected to on the ground of the erasure occasioned by the substitution of Chase's name for Hutchins'. There was at the foot of the deed, when offered in evidence, the following memorandum, signed by the officer taking the acknowledgment: "All erasures and interlineations made before signing." The court overruled the objection and admitted the deed in evidence, and this is assigned for error. Conceding the court should have heard some evidence explanatory of the erasure in question in addition to that afforded by the memorandum, yet a court of error will not reverse for such an error when the record before it affords, as it does in this case, the very explanation which it is complained was not given as a foundation for the instrument's admission in evidence. When the explanatory evidence is subsequently offered it cures the error.

But outside of all this there is another complete answer to this objection. The appellants, by their deed of the 30th of

April, 1878, which is duly acknowledged by them both, expressly recognize the validity of this junior trust deed, and they are therefore, under the circumstances of this case, estopped from raising any question as to its authenticity or binding force. We think the decided weight of evidence shows that Bearss and his wife both knew of the alteration in question at the time of making the latter deed, and they can not now be heard to complain after such recognition of the former deed.

We see no reason for disturbing the decree of the court below, and it will therefore be affirmed.

*Decree affirmed.*