JOHN WORKMAN

*v.*

DAVID GREENING.

*Filed at Springfield January 22, 1886.*

1. MORTGAGE—*of a deed absolute in form—whether a mortgage.* It is a question of intention whether a deed absolute in form is a mortgage or absolute conveyance, to be ascertained from all the circumstances in evidence; and if it appears, no matter as to the form of the transaction, that the conveyance is but an indemnity or security, it will be held a mortgage, and the kind of indemnity or indebtedness intended to be secured is unimportant.

2. SAME—*parol evidence to show the character of the transaction.* It is competent in a court of equity to show by parol evidence that an instrument purporting on its face to be an absolute conveyance of real estate, is in fact but a mortgage.

APPEAL from the Circuit Court of Sangamon county; the Hon. C. S. ZANE, Judge, presiding.

Messrs. McGuire & Salzenstein, and Messrs. Matheny & Matheny, for the appellant:

There can be no mortgage without a debt, and the surrender of the notes upon the delivery of the deed is evidence of its absolute character. *Rue* v. *Dole*, 107 Ill. 275; *Pitts* v. *Cable*, 44 id. 103; *Hanford* v. *Blessing*, 80 id. 188.

The surrender of possession to the grantee and the payment of rent to him, and payment of taxes by the latter, negatives the idea that the parties intended the deed as a security.

This is not a bill for a specific performance of the contract to reconvey, and the decree can not be supported on that theory. *Pitts* v. *Cable*, 44 Ill. 103.

Mr. N. M. Broadwell, for the appellee:

A deed absolute on its face is to be regarded as a mortgage, when it appears from satisfactory evidence that it was given as a security for the payment of money. 2 Story's Eq. Jur. sec. 1018; *Miller* v. *Thomas*, 14 Ill. 428; *Bishop* v. *Williams*, 18 id. 101; *Tillson* v. *Moulton*, 23 id. 648; *Shaun* v. *Woodward*, 28 id. 277; *Smith* v. *Creamer*, 71 id. 185; *Insurance Co.* v. *White*, 106 id. 67.

The fact being established that the grant was intended as a mortgage, the rights of the parties are measured by the rules of law applicable to mortgagor and mortgagee, the conveyance remaining a mortgage until the equity of redemption shall be foreclosed or barred. "Once a mortgage, always a mortgage." *Wynkoop* v. *Corning*, 21 Ill. 570; *Smith* v. *Creamer, supra; Insurance Co.* v. *White, supra; Tenny* v. *Nicholson*, 87 Ill. 464; *Ennor* v. *Thompson*, 46 id. 214.

In doubtful cases, courts of equity will construe the transaction to be a mortgage rather than a sale, because such construction will be most apt to attain the ends of justice, and prevent fraud and oppression. 2 Story's Eq. Jur. sec. 1018 b; 4 Wait's Actions and Defences, 515; *Russell* v. *Southard*, 12 How. 139.

A mortgage does not depend on the kind of indebtedness secured, the form in which the indebtedness exists being immaterial. The debt may be by bond, note, or parol undertaking. 1 Jones on Mortgages, secs. 264–5; *Hodgdon* v. *Shannon*, 44 N. H. 572; *Smith* v. *Bank*, 24 Me. 185; *Rice* v. *Rice*, 4 Pick. 349; *Robinson* v. *Cropsy*, 2 Edw. Ch. 143; *Horn* v. *Kittellas*, 46 N. Y. 605; *Russell* v. *Southard, supra.*

A mortgagee in the possession of the mortgaged premises, receiving the rents and profits, is bound to pay the taxes on such premises. *Moore* v. *Titman*, 44 Ill. 367; *Mosher* v. *Norton*, 100 id. 63.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a bill in equity, by appellee, against appellant, alleging that a certain instrument, purporting on its face to be an absolute conveyance of real estate, was, in fact, but a mortgage, and praying to be allowed to redeem therefrom. Appellant answered, without oath, denying the allegation, and the cause was referred to the master in chancery to take the evidence and report his conclusions thereon. The master found that the instrument was, in fact, a mortgage. Objections were filed to his finding, which he overruled, and he then reported the finding, and the objections filed thereto, and the evidence taken, to the circuit court. The objections were there renewed, but they were overruled by the court, and the court thereupon decreed confirming the master's report and granting appellee the relief prayed in his bill.

The several points discussed in the arguments on behalf of appellant all relate to the question whether the conclusion that the instrument was, in fact, but a mortgage, is warranted by the evidence. The rule is familiar that it is competent, in a court of equity, to show, by parol, that an instrument purporting on its face to be an absolute conveyance of real estate, is, in fact, but a mortgage. The question

is one of intention, to be ascertained from all the circum-
stances in evidence; and if it shall appear, no matter what
the form of the transaction, that the conveyance is, in fact,
but an indemnity or security, it will be held a mortgage,
and the character of liability against which indemnity is
intended, or the kind or dignity of indebtedness intended to
be secured, is unimportant. *Miller* v. *Thomas*, 14 Ill. 428;
*Tillson* v. *Moulton*, 23 id. 648; *Shaver* v. *Woodward et al.* 28
id. 277; *Smith* v. *Cremer et al.* 71 id. 185; *Union Mutual Life
Ins. Co.* v. *White*, 106 id. 67; *Bearss et al.* v. *Ford*, 108 id. 16.

Appellee testified that he was indebted to one Bennett, on
a promissory note originally executed to one Caldwell, but
then possessed by Bennett, in the sum of a little more than
$700, which was secured by a mortgage on the property in
controversy, and that he was also, at the same time, indebted
to appellant in small amounts, evidenced by two promissory
notes; that he applied to appellant to borrow a sum of money
with which to pay off the Caldwell note in the hands of
Bennett, and offering to give appellant a mortgage on real
estate, to secure the loan; that appellant replied to this
application, that he would not loan money and take a mort-
gage any more, but would take a deed, because if he took a
mortgage it would cost him $100 to foreclose it; that if he
loaned to appellant he would take a deed, and if appellee was
ready to pay back it would be no trouble to make a deed,
and would not cost anything. Appellee further testified, that
after several interviews, in which substantially the same con-
versation was repeated, appellant finally told him that he
would pay off the Caldwell note if Bennett would wait on
him until May or June, and that in two or three days there-
after he told appellee that Bennett had agreed to wait, and
that he would pay the note and bring it to appellee; that
on the 3d of July, 1879, appellant brought to appellee the
Caldwell note and the two small notes which appellant had
before held against appellee,—the interest and principal upon

all then amounting to $1067.93,—and that it was then agreed between them that the absolute deed should be executed, that appellee should have five years within which to redeem, and that appellant should have one-third of the crops on the land to pay interest on the indebtednes, and that thereupon, and pursuant to this agreement, the absolute deed was executed and delivered to appellant, and the notes were delivered to appellee. Appellee repeats that appellant was to take the money at any time appellee would get it, within the five years, and that the deed was intended for a security instead of a mortgage. Appellant, however, in his testimony, denied that he loaned money to appellee and that the deed was intended as a security. He testified that, holding the two small notes on appellee, he called upon him to see about them; that appellee then told him that Bennett had notified him that if he did not pay off the Frank Caldwell mortgage he would foreclose, and sell the land, and bid it in for $100, and he would then run on his other property and make the balance of his money; that appellee further said that if the land would pay the debt it might go, but that it would ruin him if Bennett went on his other property; that appellant subsequently proposed to appellee to pay off the Caldwell note, and surrender it, with the two small notes he held himself, to appellee, for the land; that some time subsequently, appellee accepted this proposal, and that he paid off the Caldwell note, and surrendered it, together with the two small notes, to appellee, and appellee executed and delivered to him the deed, in compliance with the agreement. He claims it was an unconditional purchase, in consideration of the surrender of these notes. Thus the testimony of each party fairly shows himself entitled to a decree. Which, then, is best supported by other evidence?

At the time of the execution of the deed, and as a part of the transaction, appellant indorsed the following on one of the small notes which he surrendered:

"You can redeem it in a reasonable time by paying me my money and ten per cent.          JOHN WORKMAN."

It is not denied that this means redeem the land then conveyed by appellee to appellant, and Workman admits that the language and penmanship are his, but he denies that he gave it to appellee. This is his version: "I called, and he" (appellee) "came to the fence. His wife came with the deed. She came up behind where he was standing. She said: 'Mr. Workman, we would like to have a chance to have this land back some day.' Mr. Greening" (appellee) "threw up his hand and said, 'I never want it back, and never intend to try to buy it back.' He stepped to one side and she came up in his place, and said if he would not have anything to do with it, she would like to have a chance to buy it back herself. He said he would never have anything to do with it, and I remarked to her, 'In a reasonable time I'll let you have it back.' She then handed me the deeds, and I handed her the notes. * * * She then spoke about life being uncertain, and asked me if I wouldn't as soon write what I had said. * * * She handed me that note, and I wrote that on it." Appellee testified that he did not say to appellant that he did not want the land back, but repeats that it was agreed that he was to have five years within which to make redemption. He says it was understood he was to have the writing before the deed was delivered; that appellant only expressed a part of the agreement in this writing; "that the writing by Workman did not contain all the agreement. He wrote it at the time the deed was delivered, and left it there." Again, on re-cross-examination, he said: "I and my wife had talked about having a writing before he got the deed. I said I was willing to take Workman's word, but she was not willing. When he gave this writing, and he agreed that we should have five years to redeem, and take one-third of the crops, he got the deed, and not before." So again the testimony of the one meets that of the other.

The indorsement is a direct contradiction of the claim made by appellant that there was an absolute sale. We must accept his language to mean what the words in their ordinary acceptation import. The word "redeem" implies the existence of a debt, and negatives the idea of an absolute sale. So, too, the words, "by paying me my money," clearly imply a debt due—that "my"—*i. e.*, his—"money" is in the hands, or, at least, is still owed by the debtor.

There is some other evidence, which we do not think it necessary to set out, tending also to corroborate the testimony of appellee.

Rejecting as inadmissible the testimony of appellee's wife, we are still unable to say that the preponderance of the evidence is against the decree.

The decree must therefore be affirmed.

*Decree affirmed.*

This case, when first considered, was assigned to the late Mr. Justice DICKEY to prepare the opinion, but no opinion having been prepared in his lifetime, it was re-assigned at the November term, A. D. 1885.