THE CASPER NATIONAL BANK, Appellant, *vs.* LAURA J. JENNER, Appellee.

*Opinion filed April 22, 1915—Rehearing denied June 10, 1915.*

1. MORTGAGES—*it is the intention of the parties, and not the form of the papers, that is material.* In determining whether a deed and bond for deed were intended as a mortgage, it is the intention of the parties, and not the form of the papers, that is material; and if the transaction was, in effect, a loan of money and the taking of security therefor, the conveyance will be held to constitute a mortgage.

2. SAME—*burden of proof is upon party claiming that a deed and bond for deed constitute a mortgage.* While a court of equity does not favor conditional sales and will regard a transaction as constituting a mortgage rather than a conditional sale if the evidence leaves the question in substantial doubt, yet the burden of proof is upon one who claims that a deed and bond for deed are, in effect, a mortgage.

3. SAME—*when a deed and bond for deed will not be held to constitute a mortgage.* A deed and bond for deed will not be held to constitute a mortgage where the preponderance of the evidence shows that the grantee in the deed had refused to loan the grantor money on a mortgage but was willing to purchase his equity in the land, and that in an interview after obtaining the deed she consented to execute the bond for deed to her grantor.

4. SAME—*what does not render redemption void as to a creditor of mortgagor.* If the holder of the legal title to land of which she is in actual possession makes redemption from the foreclosure of certain mortgages on the land by paying the amount due to the holder of the certificates of sale, the fact that she fails to obtain and record a certificate of redemption does not render the redemption void as against a creditor of the original mortgagor who is shown by the records to have parted with his title more than two years before the mortgages were foreclosed.

5. SAME—*when sheriff's deed issued on certificate of redemption will be set aside.* A sheriff's deed issued on a certificate of redemption from certain foreclosure sales by an alleged creditor of the original mortgagor will be set aside, notwithstanding the statutory provisions for redemption have been followed, where the evidence shows that the proceeding is being conducted collusively in the interest of the original mortgagor and in fraud of the equities and rights of one who purchased the land from the original mortgagor at a time prior to the foreclosure of the mortgages, and

who thereafter actually redeemed from the foreclosure sales by making payment of the money · directly to the person who held the certificates of purchase.

CRAIG, J., dissenting.

APPEAL from the Circuit Court of Lawrence county; the Hon. ENOCH E. NEWLIN, Judge, presiding.

CREIGHTON & THOMAS, for appellant.

NOAH M. TOHILL, for appellee.

Mr. JUSTICE WATSON delivered the opinion of the court:

On October 21, 1908, William A. Lester and wife conveyed to Laura J. Jenner a farm of 252 acres in Lawrence county, Illinois, receiving from her as consideration the sum of $4000, and on the same day Mrs. Jenner made a bond for deed to said William A. and Zetta Lester, husband and wife, agreeing thereby to convey the premises to them upon payment of a note for the sum of $4000 then given by them to her, payable five years after said date, with interest on said sum at the rate of seven percentum per annum, payable annually. This conveyance and bond were subject to two mortgages,—one for $2400 upon 162 acres of the land, being in form a trust deed, and the other for $1300 on the remaining 90 acres. Afterwards Horace W. Jenner, a son of Laura J. Jenner, bought the mortgages and foreclosed them at the February term, 1911, of the Lawrence circuit court. Horace W. Jenner became the purchaser at the master's sales for the respective amounts due under the foreclosure decrees, and before the expiration of the time for redemption, he, with his mother, moved upon the lands, where they still reside. It is claimed on the part of Laura J. Jenner that she redeemed the premises from the foreclosure sales October 23, 1911, by payment direct to her son of the amount due under his certificates

of sale. On July 6, 1912, more than twelve months and less than fifteen months after the date of the foreclosure sales, William A. Lester, who lived at Casper, Wyoming, appeared in person in the office of the clerk of the circuit court of Lawrence county and by his own affidavit caused a judgment to be entered by confession against himself and in favor of the Casper National Bank of Casper, Wyoming, upon a judgment note for $10,000 given by him to the said bank, dated December 1, 1911, and due June 1, 1912. Under execution, redemption was made by said bank from the foreclosure sales, the lands were by the sheriff advertised and sold, the bank becoming the purchaser, and on July 31, 1912, the bank received a sheriff's deed to the premises. After demand for possession and notice of its purpose, the bank, at the May term, 1913, of the Lawrence circuit court, became a party to the two foreclosure suits by filing its motion and intervening petition in each, setting up the material facts, claiming to be the owner of the lands, and praying to be so declared and to be let into possession by writs of assistance to be issued in said causes. The petitions and the causes were ordered to be consolidated and were thereafter treated and considered as one suit. In due course answers were filed by Laura J. and Horace W. Jenner, the latter disclaiming any interest, and at the same time Mrs. Jenner filed her cross-bill, praying cancellation of the deed held by the bank as being fraudulent and a cloud upon her title, that she be adjudged owner in fee simple of the premises, and for general relief. The bank and the Lesters joined in an answer to the cross-bill, replications were duly filed, and upon the issues thus made the consolidated cause was heard and tried and a single decree was entered, which is by appeal brought here for review.

By its decree the circuit court found the issues and the equities for and with Laura J. Jenner, (the suit having been previously dismissed by the court as to Horace W.

Jenner,) granted her the relief prayed by the cross-bill and dismissed the petition of the Casper National Bank at its cost, for want of equity. The sum of $150 was ordered taxed as additional costs because appellee's attorney went to Casper, Wyoming, in response to a notice from appellant for taking depositions upon oral interrogatories, and the depositions were not taken.

In disposing of the assignments of error we must consider the effect of the transactions of October 21, 1908, between the Lesters and Mrs. Jenner, the validity of the alleged redemption by Mrs. Jenner from the master's sales and the force and effect of the deed from the sheriff to the appellant bank, together with the charges and countercharges of fraud and unfair dealings, as the same may be disclosed by the evidence and preserved for our consideration.

It appears from the proof that William A. Lester endeavored to borrow $4000 from Mrs. Jenner, the appellee, (then or later known as Mrs. Hazelton,) on his land and to give her a mortgage thereon. She hesitated and was in doubt as to the sufficiency of the security, and he undertook to pay, and later did pay, $40 to her son Grover for getting the money for him from her. They met in Lawrenceville on the day mentioned, and on advice of her counsel, and after due consideration, she declined the loan but agreed to buy his equity in the land for $4000. The deed was executed and paid for and delivered, and at a later time, but on the same day, negotiations were renewed and consummated whereby she agreed to sell the equity in the land to Lester and wife for $4000, payable in five years, with seven per cent interest per annum, payable annually, the agreement being evidenced by a note then made by Mr. and Mrs. Lester to Mrs. Jenner for the $4000, payable as aforesaid, and a bond for deed made by Mrs. Jenner to them, providing for conveyance of the land by her to them upon payment of the note and interest according

268 — 10

to its terms. The bond contained the usual conditions as to becoming null and void upon failure to pay the note according to its terms, and making time of payment material and of the essence of the contract.

If the deed and bond for deed constituted, in effect, a loan of money and the taking of security therefor, the form of papers used is immaterial, for the deed would in such case be construed as a mortgage, and if it was a mortgage it still remains such and the equity of redemption can only be cut off in the manner prescribed by law. The intention of the parties will govern, and that intention may be shown by parol or other evidence. (3 Pomeroy's Eq. Jur. secs. 1194, 1196; *Helm* v. *Boyd,* 124 Ill. 370; *Wright* v. *Gay,* 101 id. 233; *Delahay* v. *McConnel,* 4 Scam. 156; *Union Mutual Life Ins. Co.* v. *White,* 106 Ill. 67; *Bearss* v. *Ford,* 108 id. 16.) If the evidence leaves a substantial doubt as to whether the transaction constitutes a mortgage or a conditional sale, the doubt will be so resolved as to treat it as a mortgage, since the courts of equity do not favor conditional sales. (1 Jones on Mortgages, sec. 279; *Keithley* v. *Wood,* 151 Ill. 566.) The burden of proof is upon the party claiming the transaction to be a mortgage. *Gannon* v. *Moles,* 209 Ill. 180; *Heaton* v. *Gaines,* 198 id. 479.

The persons testifying upon the subject under consideration were Mrs. Jenner and her sons, Horace and Grover, and attorney McGaughey, upon the one hand, and Mr. and Mrs. Lester upon the other. All agree that Mrs. Jenner refused the loan upon mortgage security, and all but the Lesters say she bought the equity in the land from William A. Lester and paid for it, and a short time afterwards, on the same day, sold it to William A. and Zetta Lester, his wife. The wife of Lester was clearly not a competent witness as to any transaction occurring before she became interested in the land as a purchaser. If, as she claims, she never became so interested because the transaction was but

a loan to her husband upon mortgage security, then she was at no time competent to testify and the chancellor correctly refused to consider her testimony. The interest of her husband in the subject matter of the litigation rendered her incompetent to testify, regardless of her relation to the subject matter of the suit and regardless of the fact he was not directly a party to the petition filed. (Hurd's Stat. 1913, secs. 1, 5, p. 1234; *Thomas* v. *Anthony,* 261 Ill. 288; *Craig* v. *Miller,* 133 id. 300.) While William A. Lester strenuously and consistently claimed the entire transaction was but a loan, yet he admitted, while testifying, that Mrs. Jenner refused to loan him the money because the security was insufficient but offered to advance the money on a deed.

We see no reason to disturb the finding of the chancellor to the effect there was a sale rather than a loan, supported as it is by the testimony of the four competent witnesses and by the subsequent conduct of the parties in interest now to be mentioned. On October 23, 1911, two days after the annual interest became due and remained unpaid, Mrs. Jenner canceled the $4000 note of Mr. and Mrs. Lester and sent it to Lester by mail, together with a notification that his bond for deed was forfeited because of non-payment of interest. As soon as he could do so Lester sent the interest money to a bank in Lawrenceville, where it was payable by the terms of the note, and that money is there yet, having been refused by Mrs. Jenner. So far as the evidence discloses, Lester retained the canceled note and has not returned it to Mrs. Jenner, nor has he paid, or offered to pay, the principal sum and the interest accruing after October 21, 1911. There was also no assertion by either Mr. or Mrs. Lester in the foreclosure suits, to which they were parties defendant, that either or both owned the lands involved, and they are, possibly, precluded by the findings in those decrees that the lands were owned by

Mrs. Jenner. The decrees, so far as the Lesters were concerned, were entered in the foreclosure suits by default.

Considerable sums of money, in the aggregate $1353.57, were expended by Mrs. Jenner upon the farm and buildings after she entered into possession thereof for the purpose of making her home thereon, on October 25, 1911. No offer has been made by either of the Lesters or by the appellant bank to re-pay these sums or the $4000 paid by her in purchase of the title, and if the contention of the appellant bank is upheld, she is the loser of these sums, with the interest thereon.

Comment is made upon the peculiar fact that Mrs. Jenner's son, who is an adult member of her household, bought and foreclosed the two mortgages which together constituted a first lien on all the premises. It is insisted that the mother and son were in collusion, their evident purpose being to cut off a possible claim of title on the part of Lester by and through the foreclosure of these mortgages. This view may be correct, and we think it is correct; but we are unable to see that any estoppel can arise therefrom, since Lester asserted no claim in the foreclosure suits and since the evidence shows that Mrs. Jenner, by payment to her son, canceled and extinguished the certificates of sale issued in the foreclosure suits before the expiration of the twelve months' period of redemption allowed by law. The foreclosure decrees allowed her specifically a fifteen months' redemption period, for what reason does not appear either of record or by the evidence, but her right of redemption depended upon the statute and not upon the decrees.

When the redemption was made a certificate thereof was due from Horace W. Jenner to Laura J. Jenner, but none was issued or recorded, and it is insisted that circumstance was likely to mislead the appellant bank and induce it to make redemption from the foreclosure sales as a judgment creditor of Lester, and that the failure to take and record the certificate of redemption made the redemption

void. (Hurd's Stat. 1913, chap. 77, sec. 19; *McRoberts* v. *Conover,* 71 Ill. 524; *Moore* v. *Hopkins,* 93 id. 505.) The deed records showed appellant,. however, that Lester had parted with his title in October, 1908; and appellant was also chargeable with notice of all of Mrs. Jenner's rights and claims, she being in the actual possession and occupation of the lands upon which it levied, and upon inquiry the bank could doubtless have learned of her possession as owner, of the cancellation of the certificates of sale by her in apt time, and of the receipt and retention by Lester of his canceled $4000 note for the purchase money of the land, as well as the expenditure of said aggregate sum of $1353.57 by her in the improvement of the premises. (*Mathias* v. *Fulton,* 241 Ill. 598; *Williams* v. *Spitzer,* 203 id. 505.) We are of opinion, from the evidence, the appellant bank was not only chargeable with notice, but had actual knowledge of the controlling facts above referred to, with the exception of the ,fact of the redemption by Mrs. Jenner from the foreclosure sales and of the precise amount expended in improvements, and was not in position to ask the relief in equity which it did ask through its petition in this cause.

The evidence discloses that William A. Lester was engaged, and for years had been extensively engaged, in sheep farming in Wyoming and had become largely indebted (in excess of $10,000) to the appellant bank for money loaned. The bank had security from him, from time to time, for this indebtedness, both upon his real and his personal property in Wyoming,—whether ample or sufficient security was a controverted but immaterial question. When the note for $10,000, upon which the judgment was later confessed, was made by Lester to the bank it was not for a new loan and no credit therefor was given upon the former indebtedness. The proof indicates that no credit is to be given unless and until the suit at bar shall result successfully. After the maturity of said $10,000 note Lester

came some thirteen hundred miles from his home near Casper, Wyoming, to Lawrence county. The confessed judgment was entered against him upon his own initiative, and he has been in active charge, apparently, of the subsequent proceedings of the appellant bank's part of this litigation, although he testified the moneys advanced, from time to time, for expenses and for making the redemption from the foreclosure sales have been the moneys of the bank. Mr. and Mrs. Lester were personally present at the trial of the cause and gave testimony at the instance of the appellant bank, but no officer or employee of the bank appeared as a witness or otherwise, either in connection with the taking of the judgment by confession, the redemption or the preparation or trial of the cause; also, no one connected with the bank gave testimony in the case by deposition or in open court.

From the significant circumstances above recited and from a survey of the whole situation as disclosed by the records and the proofs, we are brought irresistibly to the conclusion reached by the chancellor, being the conclusion that appellant's connection with the business under consideration is inequitable and ought not to receive the approval of a court of conscience, the purpose being to reclaim and recover for William A. Lester the lands in controversy through compliance with statutory requirements in such manner as to permanently deprive Laura J. Jenner of the sum of $4000 invested by her in the purchase of said lands and the further sum of $1353.57 expended by her in the improvement thereof. The appellant bank has followed the provisions of the statute permitting redemption from judicial sales with fidelity and accuracy, but finding, as we do, that its proceedings are being conducted collusively in the interest of William A. Lester and in fraud of the equities and rights of Mrs. Jenner, we conclude it took nothing by its sheriff's deed.

The decree of the circuit court dismissing the petitions of the appellant bank for want of equity and quieting the title to the premises in Laura J. Jenner under her cross-bill is therefore affirmed.     *Decree affirmed.*

Mr. Justice Craig, dissenting.