Daniel H. Bane, Appellant, v. Robert M. Pritchett
et al., Appellees.

Gen. No. 6,951.

1. MORTGAGES—*admissibility of parol evidence in ascertaining
whether conveyance is deed or mortgage.* In determining whether
an instrument in the form of a conveyance is a deed or a mort-
gage, the courts first look to the intention of the parties, and in
ascertaining this intention not only will the writings themselves
be examined but parol evidence is admissible.

2. MORTGAGES—*deed as not made mortgage by contemporaneous
execution of written contract.* The mere fact that a written con-
tract was executed at the same time as a deed does not necessarily
make the deed a mortgage.

3. MORTGAGES—*when conveyance construed as mortgage.* If the
entire debt which was the consideration for a conveyance was
canceled and all the evidence of the debt surrendered, the writing
will generally be construed as an absolute conveyance; but if the
debt is not canceled and the deed and contract are security for
the continuing debt, the instruments will be construed as a mort-
gage.

4. MORTGAGES—*who has burden of proving absolute deed to be
mortgage.* As a general rule, the burden of proof is upon the
party who seeks to have an absolute deed construed as a mortgage.

5. MORTGAGES—*degree of proof required to show warranty deed
to be mortgage.* Where land is conveyed by a warranty deed and
there is no defeasance either in the deed or a collateral writing
and parol evidence is resorted to for the purpose of establishing
that the deed was given as a mortgage, such evidence must be
clear and convincing to overcome the presumption that the deed
is what it purports to be.

6. MORTGAGES—*when instruments will be construed as mortgage.*
Where there is a conveyance by deed and a defeasance in a col-
lateral writing or contract for resale and the evidence leaves no
doubt that the transaction was intended as a conditional sale
or mortgage, the instruments will be construed as a mortgage and
all doubts will be resolved in favor of such a construction.

7. MORTGAGES—*use of word "redeem" in collateral contract as
negativing idea of absolute sale.* The use of the word "redeem"
in a contract made collaterally with a deed of land implies the
existence of a debt and negatives the idea of an absolute sale.

8. MORTGAGES—*sufficiency of evidence that deed and contract
were given as security for debt.* A deed of conveyance absolute

in form and a contract made collaterally thereto between the parties, together with all the other evidence, examined and *held* to show that the deed and contract were given merely as security for a debt and not as an absolute conveyance of real estate.

9. MORTGAGES—*continuance of original mortgage character of deed.* Every deed takes effect from delivery, its character being fixed at that time, and if it is then a mortgage it continues to be such until the right of redemption is barred by one of the modes recognized by law.

10. MORTGAGES—*what stipulation does not change mortgage effect of deed.* Where a deed, absolute in form, is given and intended as a mortgage, its legal effect is not changed by an express stipulation of the parties that the title of the grantee shall become absolute and unredeemable on failure of the grantor to pay the debt secured on the day fixed for such payment as no effect will be given to such agreement, it being beyond the power of the parties thus to avoid the necessity for a foreclosure or to restrict the right of redemption.

11. APPEAL AND ERROR—*presumption that no improper evidence was considered.* Where a hearing upon a bill to have a warranty deed declared a mortgage was had before the master and the court, the presumption is that no improper evidence was considered on the final determination of the case.

12. APPEAL AND ERROR—*harmless error in admission of evidence.* If there was sufficient proper evidence offered on a hearing before the master and the court upon a bill to have a warranty deed declared a mortgage, there could be no injury by reason of the fact that improper evidence was admitted.

JONES, J., dissenting.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1921. Reversed and remanded. Opinion filed November 2, 1921.

McDOUGALL, CHAPMAN & BAYNE, for appellant.

W. C. JONES, for appellees.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellant, Daniel H. Bane, filed his bill in the circuit court of La Salle county against appellee Robert M. Pritchett to have a warranty deed declared to be

a mortgage and for an accounting of rents and profits. The cause was referred to the master who recommended that the bill be dismissed for want of equity, exceptions to the report were overruled, the bill was dismissed and from that decree this appeal was prosecuted.

Appellee Robert M. Pritchett is a banker and merchant, residing in Dana, La Salle county. In 1899, Bane gave him a note for $200. In August, 1901, Bane borrowed $7,000 and gave another note to Pritchett. Nothing was ever paid on either of these notes, either as principal or interest, and Pritchett placed them in the hands of A. W. Fulton, a lawyer of Chicago, for collection. Fulton had several interviews with Bane, who owned 237 acres of land in La Salle county. On May 9, 1905, Pritchett and Bane met at Fulton's office. At that time Bane owed Pritchett $9,218 as principal and interest on the notes and a small book account. It was agreed that the land should be figured at $110 per acre, subject to mortgages of $20,000, which Pritchett was to assume. The total consideration for the farm was $26,070. Bane conveyed the farm by warranty deed to Pritchett and $6,070 of the indebtedness is alleged to have been canceled. Bane gave a new note for the balance, amounting to $3,148. At the same time an instrument was executed which is in controversy in this case, and which Bane contends was a contract of defeasance, and which Pritchett contends was a contract giving Bane the right to repurchase within a period of 3 years. This instrument provided that rental notes, executed by one Wakeman, for $2,400, covering rent for the years 1905 and 1906, should be delivered by Bane to Pritchett. These notes were never delivered to Pritchett, but were in the possession of a man by the name of Aldrich, of Normal, Illinois, as collateral security for an indebtedness due Aldrich, which indebtedness was greater than the amount of notes. Pritchett took pos-

session of the farm and has been in possession since the delivery of the deed. He has paid all taxes and insurance and has made repairs amounting to $800.

The deed of conveyance contained no conditions or limitations, but there were conditions and limitations contained in the written instrument executed concurrently with the deed. · The contract is as follows:

"This agreement, made between D. H. Bane, party of the first part and R. M. Pritchett, party of the second part, the date above written,

"Witnesseth: That whereas first party has this day conveyed to second party the farm consisting of 237 acres, known and described as follows: (Here follows description) for a consideration of $110.00 per acre, amounting to $26,070.00, being $6,070.00 cash paid to first party by second party, and the assuming of mortgages, amounting to $20,000.00, now incumbering said land, notwithstanding the consideration named in said deed is placed at $30,000.00. It is, therefore, agreed between the parties hereto as follows:

"1. Upon repayment at any time within three years from date hereof, of said consideration of $110.00 per acre, together with a certain note of $3,148.00, of this date made by said D. H. Bane and Ira O. Bane and Annis E. Bane, payable to said R. M. Pritchett, then said second party hereby agrees to convey said premises to first party, or any person or persons designated by him.

"2. Party of the second part shall have the rents and profits of said farm from March 1, 1905, until such time as same may be redeemed as above provided. The Wakeman rental notes shall be delivered to the second party on or before November 1, 1905.

"3. Party of the first part agrees to furnish for examination abstract to title brought down to date.

"4. It is further agreed that in case said second party shall pay off any of said incumbrances before the redemption, as above provided, then in case of redemption, said first party shall pay second party in cash the amount so paid off, or give a mortgage to sec-

ond party for the amount thereof upon said land.

"5.   It is further agreed that in case said land is not redeemed by first party as above provided within said three years from date hereof, that in such case the warranty deed this day executed between the parties hereto, conveying said land to second party, shall become absolute and this agreement shall then become null and of no effect, and it is further agreed that time is the essence of this contract.

"6.   Party of the second part hereby stipulates and warrants that there are now no judgments or liens of any kind against him which are in any way a lien or cloud upon the title to said land, except the mortgages above referred to.

"7.   This agreement is binding upon the administrators, executors and heirs of the parties thereto."

The sole question is whether the deed and contract constitute an absolute conveyance, or whether they are merely a mortgage given as security for the debt.

Section 12, ch. 95 (Hurd's Rev. St. 1919, page 2012, Cahill's Ill. St. ch. 95, ¶ 13) provides that every deed conveying real estate which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. In determining whether such an instrument is a deed or a mortgage, the courts first look to the intention of the parties. *Pitts v. Cable,* 44 Ill. 103; *Bearss v. Ford,* 108 Ill. 16; *Casper Nat. Bank v. Jenner,* 268 Ill. 142. In ascertaining this intention, not only the writings themselves will be examined but parol evidence is admissible for the purpose of ascertaining such intent. *Workman v. Greening,* 115 Ill. 477; *Totten v. Totten,* 294 Ill. 70. The mere fact there was a written contract executed at the same time as the deed does not necessarily make the deed a mortgage. *Hanford v. Blessing,* 80 Ill. 188; *Rue v. Dole,* 107 Ill. 275; 1 Jones on Mortgages, sec. 265. If the entire debt which was the consideration for the conveyance was

canceled and all evidence of the debt surrendered, the writing will generally be construed as an absolute conveyance. But if the debt is not canceled and the deed and contract are security for the continuing debt, the instruments will be construed as a mortgage and not as a deed absolute. *Crane v. Chandler,* 190 Ill. 584; *Caraway v. Sly,* 222 Ill. 203; *Kelly v. Lehmann,* 297 Ill. 33. As a general rule the burden of proof is upon the party who seeks to have an absolute deed construed as a mortgage, and where the land is conveyed in fee by a deed, with covenants of warranty, and there is no condition of defeasance either in the deed or in a collateral paper, and parol evidence is resorted to for the purpose of establishing that the deed was given as a mortgage, such evidence must be clear and convincing, otherwise the presumption that the deed is what it purports upon its face to be must always prevail. *Eames v. Hardin,* 111 Ill. 634; *Strong v. Strong,* 126 Ill. 301; *Rankin v. Rankin,* 216 Ill. 132; *Friend v. Beach,* 276 Ill. 397; *Novak v. Kruse,* 288 Ill. 363; *Williams v. Williams,* 180 Ill. 361; *Gannon v. Moles,* 209 Ill. 180. This is not the rule, however, where there is a conveyance by a deed, and a defeasance in a collateral writing or contract for resale and the evidence leaves it in doubt whether the transaction was intended as a conditional sale or mortgage. Under such circumstances as this, as a general rule, the instrument will be construed as a mortgage and not as a deed of conveyance, and the doubts will be resolved in favor of the instruments being a mortgage. *Keithley v. Wood,* 151 Ill. 566; *Jeffery v. Robbins,* 167 Ill. 375; *Burgett v. Osborne,* 172 Ill. 227; *Fisher v. Green,* 142 Ill. 80; *Casper Nat. Bank v. Jenner, supra; Shultz v. McCarty,* 193 Ill. App. 318; 6 Ency. of Evidence, p. 178; 27 Cyc. 1027; 20 Amer. & Eng. Encyc. of Law, p. 937; 1 Jones on Mortgages (5th Ed.), sec. 279, p. 195. In *Hanford v. Blessing, supra,* it was held that contracts of repurchase, made contemporaneously

with conveyances of real estate, absolute in form, are sometimes strong evidence tending to show that the conveyances are intended as mortgages.

On the day of the conveyance in question there was $9,218 due. The land came to $26,070, and from this were deducted the mortgages, amounting to $20,000, leaving an equity of $6,070. It is claimed by Pritchett that by the conveyance the amount of this equity was canceled, but a new note signed by Bane, together with sureties, was given for $3,148, the balance of the debt. Clause 1 of the contract provided that upon the repayment within 3 years of $110 per acre, together with the note of $3,148, Pritchett was to reconvey to Bane. The entire debt was not canceled, but part of it remained and in order for Bane to again secure title, he was not only required to pay the debt claimed to be canceled, but he was also required to pay the note of $3,148. There was a valid subsisting debt due and the deed and contract, considered alone and by themselves, tend very strongly to show that the deed and contract were executed as security for the debt rather than as a deed absolute and that it was contemplated by both parties that Bane should have the right to redeem.

The remaining paragraphs of the contract tend to confirm this view. Clause 2 provides that Pritchett shall have the rents and profits until such time as the farm "may be redeemed as above provided." Clause 4 provided that if Pritchett should pay off any of the incumbrances "before the redemption, as above provided, then in case of redemption" Bane should pay in cash the amount so paid off, or give a mortgage for the same. Clause 5 provided "that in case said land is not redeemed" as above provided, that the warranty deed shall become absolute and the agreement became null and void.

This contract was drawn by a lawyer who testified that he followed the instructions given him by Pritchett and Bane.

The language used has a well-known legal meaning. The presumption is that the usual legal meaning was intended. The word "redeem" implies the existence of a debt and negatives the idea of an absolute sale. There can be no redemption from an absolute sale, but redemption must be from a mortgage. All through this contract the word redeem is used. Fulton, the lawyer, who drew the contract, testified that he thought redemption and repurchase meant the same thing, but he also testified that when he drew the deed he felt that it would not become absolute for 3 years. On March 25, 1908, Pritchett wrote to Bane as follows: "As your note will mature May 9, I thought I would write as it would be a favor to me if you would advise me as to what you expect to do about redeeming the land, as I would like to make arrangements accordingly. I feel it is time now to know what we are going to do, and hope you will give me an early reply." The language of the contract, considered in connection with all the evidence in this case, shows that the deed and contract were merely the security for the debt and were not an absolute conveyance of the real estate.

In *Ewart v. Walling*, 42 Ill. 453, the deed was an absolute conveyance, but a bond executed at the same time provided for redemption, and it was held that, notwithstanding the fact that there was a recital that the land was conveyed in liquidation of the debt, that where it also provided for a redemption it would seem to have been intended as a security for the debt. In *Workman v. Greening, supra,* there was a conveyance by deed with a parol agreement for a redemption, and across the face of one of the notes was written, "You can redeem it in a reasonable time by paying me my money and ten per cent." On page 483 the court said: "The indorsement is a direct contradiction of the claim made by appellant that there was an absolute sale. We must accept his language to

mean what the words in their ordinary acceptation import. The word 'redeem' implies the existence of a debt and negatives the idea of an absolute sale. So, too, the words, ''by paying me my money' clearly imply a debt due—that 'my'—i. e., his—'money' is in the hands, or, at least, is still owed by the debtor.'' In *Keithley v. Wood, supra,* there was an absolute deed, together with a written agreement to convey back on the payment of $937 by a date named. There was an extension of time with the statement that the money was due and no more extensions would be granted. It was held that the deed was a mere security and that if there was an indebtedness or liability between the parties, either a debt existing prior to the conveyance, or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt was left as still subsisting, not being discharged or satisfied by the conveyance, but the grantor was regarded as still owing and bound to pay at some future time, so that the payment stipulated in the agreement to reconvey was in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulation they may have inserted in the instrument.

The fifth clause of the contract provides that if redemption is not made within the time specified, that the deed shall become absolute and the agreement null and of no effect. This language strongly indicates that the deed was not considered as an absolute conveyance. Every deed takes effect from its delivery and its character thereby becomes at once fixed. It cannot after such delivery be one thing today and another tomorrow. If it is a mortgage when delivered it continues to be such until the right of redemption is barred by some one of the modes recognized by law. Nothing is more firmly established in the law of mortgages than that it is not competent for the parties,

by express stipulation, to cut off the right of redemption, and to permit them to make such an instrument an absolute deed upon some future contingency would simply be cutting off the right of redemption which cannot be done. *Bearss v. Ford,* 108 Ill. 16; *Johnson v. Prosperity Loan & Building Ass'n,* 94 Ill. App. 260; 1 Jones on Mortgages (5th Ed.) secs. 250-251, p. 168; 27 Cyc. p. 996.

Considerable oral evidence was taken in this case. It will be impossible to refer to all of it, but it confirms the theory that the conveyance was not absolute. The negotiations for this settlement covered considerable time and several conversations between Pritchett, Fulton, Mackey, Daniel H. Bane and Ira O. Bane, and their testimony appears in the record. Pritchett testifies that this was an absolute sale, and that after the deed was made, the contract was executed at his suggestion because of his friendship for appellant's mother; that prior to this time appellant had offered to transfer certain property in Colorado and stock in a livery stable in Chicago, but he refused to accept these propositions, and that the land was sold to him in payment of the debt. Pritchett is corroborated in almost every detail by Fulton, who testified that the contract was drawn under the instructions and according to the directions of Pritchett and Bane. Appellant testified that the deed was executed simply as a security for the debt and not as an absolute deed. Mackey and Ira O. Bane testified to conversations with Pritchett in which security was mentioned, but no reference was made to a sale. There is considerable conflict in the testimony and considerable dispute as to the date these conversations took place, who were present and just what was said, but no good purpose would be served by going into detail in reference thereto. We think it is sufficient to say that from a careful consideration of all the evidence we are of

the opinion that the chancellor was in error in dismissing this bill for want of equity.

It is contended by appellees that appellant was prevented by laches from recovering in this case. The deed was dated May 9, 1905, and 3 years were given within which to redeem. The redemption period expired May 9, 1908. The bill in this case was filed April 1, 1913. Where a deed absolute in form is given and intended as a mortgage, its legal effect is not changed by an express stipulation of the parties that the title of the grantee shall become absolute and unredeemable on failure of the grantor to pay the debt secured on the day fixed for such payment. No effect will be given to such agreement, for the parties cannot thus avoid the necessity of a foreclosure or restrict the direct right of redemption. *Jackson v. Lynch,* 129 Ill. 72; *Green v. Capps,* 142 Ill. 286; *Halbert v. Turner,* 233 Ill. 531; *Totten v. Totten, supra.*

Complaint is made by appellant that certain evidence was improperly admitted. This was a hearing before the master and the court and the presumption is that no improper evidence was considered on the final determination of the case. If there was sufficient proper evidence offered there can be no injury by reason of the fact that improper evidence was admitted.

For the error indicated the decree will be reversed and the case remanded with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded with directions.*

JONES, J., dissenting.