## First National Bank of Chicago, Appellant, v. Edith McCarthy et al., Appellees.

### Gen. No. 43,913.

Opinion filed May 4, 1948. Released for publication June 4, 1948.

NAT M. KAHN, of Chicago, for appellant.

KINNE & SCOVEL, of Chicago, for appellee; HARRY C. KINNE and ELMER M. LEESMAN, both of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

The First National Bank of Chicago (hereinafter for convenience referred to as the First National Bank or plaintiff) instituted this proceeding in equity against

Edith McCarthy and others to enforce its judgment lien and to procure a money decree against Edith McCarthy personally. After a trial by the chancellor upon stipulated facts, documentary evidence, depositions of various witnesses and the answers of Edith McCarthy to interrogatories propounded by plaintiff, he entered a decree dismissing the case for want of equity. Plaintiff appeals. No question is raised on the pleadings. The principal defendant, Edith McCarthy, will sometimes hereinafter be referred to as the defendant.

Plaintiff sought relief in its complaint and presented evidence in the trial court against defendant in reference to the estates of both her mother, Mina McCarthy, and her father, Edward J. McCarthy, but, since it elected in its reply brief to abandon its claim against Edith McCarthy in respect to her mother's estate, it is unnecessary to consider any evidence produced before the chancellor in regard to the estate of Mina McCarthy, who predeceased her husband, Edward J. McCarthy.

There is no dispute as to the material facts, which are as follows: On December 28, 1931, Mina McCarthy and Edward J. McCarthy issued their promissory note for $10,000 secured by their first mortgage trust deed conveying the property commonly known as 843 Sheridan road, Wilmette, Illinois. The Wilmette State Bank became the owner of said first mortgage note, which was reduced to $5,000 prior to the death of Edward J. McCarthy. He died on June 12, 1933, leaving a will by which he devised this property to his daughter, Edith McCarthy, subject to said note and trust deed. During the lifetime of Edward J. McCarthy, the First National Bank loaned him $11,000. Some time prior to June 5, 1934, the First National Bank filed its claim for the amount of this loan and interest thereon in the probate court of Cook county against the estate of Edward J. McCarthy. On June 5, 1934, the Wilmette State Bank filed its complaint in the

superior court of Cook county to foreclose its aforesaid first mortgage for $5,000 against the property in question, making Edith McCarthy and the First National Bank parties defendant. The First National Bank filed an answer in the foreclosure suit, in which it averred *inter alia* that it had filed its claim in the probate court against the estate of Edward J. McCarthy for $11,000, which it had loaned to the decedent during his lifetime. Edith McCarthy's answer to the complaint in the foreclosure suit alleged in part that "the property, together with the improvements thereon, is reasonably worth $20,000 or more."

On November 24, 1934, a decree of sale was entered in the foreclosure suit wherein the amount found to be due the Wilmette State Bank on its mortgage indebtedness was $5,814.42. The decree also found that the claim of the First National Bank for $11,000 filed in the probate court against the estate of Edward J. McCarthy constituted a valid lien against the premises in question but that said lien was subject and subordinate to the lien of the Wilmette State Bank under its first mortgage trust deed. The decree of sale ordered in part that "the defendants and all persons claiming by, through or under them since the commencement of this suit be forever barred and foreclosed from all equity of redemption and claim to said mortgaged premises, or any part thereof, if the same are not redeemed according to law by the defendants, their heirs, administrators or grantees, within twelve (12) months next after the date of said sale, and by all judgment creditors and their respective assigns within fifteen (15) months next after the date of said sale. . . ."

A sale under the foreclosure decree was had on December 24, 1934, and the master's certificate of sale for $5,998.24 was issued to William B. Robinson as nominee of the Wilmette State Bank. Said amount was only sufficient to satisfy in full the first mortgage

indebtedness. On March 8, 1935, the claim of the First National Bank, theretofore filed in the probate court against the estate of Edward J. McCarthy, was allowed to the extent of $12,365.57.

On February 17, 1936, after her right to redeem from the Wilmette State Bank foreclosure sale had expired, Edith McCarthy filed an application with Quinlan & Tyson, Inc., agent for the Northwestern Mutual Life Insurance Company, for a first mortgage loan of $9,000 on the property in question and on March 3, 1936, she executed her note and mortgage therefor, which mortgage was recorded on March 4, 1936. On April 21, 1936, which was more than fifteen months after the date of the foreclosure sale, William B. Robinson assigned the master's certificate of sale to Eunice Lacek, an office employee of Quinlan & Tyson, and on the same day Quinlan & Tyson delivered its check for $6,477.10 to the Wilmette State Bank in payment for the certificate of sale. On April 22, 1936, the master in chancery executed and delivered his deed conveying the property to Eunice Lacek, which deed was recorded on April 24, 1936. The property involved herein is improved with a ten-room residence and a receiver was appointed to collect the rents therefrom. A short time after the expiration of plaintiff's redemption period the receiver paid Edith McCarthy $1,070.17 from rents collected by him from the property. He had previously paid her $50 from such rents. On May 14, 1936, Eunice Lacek conveyed the property in question to Edith McCarthy by quitclaim deed, which was recorded on May 15, 1936.

Edith McCarthy's application of February 17, 1936 to Quinlan & Tyson for the first mortgage loan of $9,000 from the Northwestern Mutual Life Insurance Company stated that the purpose of her loan was ''to refund a loan of $5,000 [Wilmette State Bank loan] and accrued interest, pay delinquent taxes and fore-

closure expenses.'' The proceeds of defendant's loan from the Northwestern Mutual Life Insurance Company were delivered to the Quinlan & Tyson company, which rendered a disbursement account thereof to Edith McCarthy. It appears from said account that Quinlan & Tyson received the proceeds of the loan from the mortgagee insurance company on April 21, 1936 and that on the same day Edith McCarthy deposited $1,120.17 with Quinlan & Tyson to be used in addition to the $9,000 loan in purchasing the certificate of sale and in paying delinquent taxes and other necessary expenses; and that, after 'the Quinlan & Tyson company had paid the Wilmette State Bank $6,477.10 on April 21, 1936, for the certificate of sale, $2,500 for delinquent general taxes, $98.15 for delinquent instalments of special assessments against the property and sundry other necessary items in connection with the loan and the title to the property, it closed Edith McCarthy's account and sent her a check for $268.

It clearly appears or may reasonably be inferred from the foregoing facts that, after the expiration of defendant's redemption period, the Wilmette State Bank agreed to permit her to purchase the certificate of sale in the event that the First National Bank did not exercise its right to redeem; that on the basis of said agreement Quinlan & Tyson made a tentative arrangement with the Northwestern Mutual Life Insurance Company to make a mortgage loan of $9,000 on the property to Edith McCarthy, the proceeds thereof not to be made available unless plaintiff failed to redeem; that when plaintiff failed to redeem from the foreclosure sale within fifteen months as required by law and the decree of sale, the insurance company delivered the proceeds of the loan to Quinlan & Tyson to purchase the certificate of sale; that in making such purchase Quinlan & Tyson had the certificate of sale assigned to one of its employees, Eunice Lacek, as de-

fendant's nominee, so that the master's deed would be issued to the said Eunice Lacek; and that after the property was conveyed by the master's deed to Eunice Lacek, she in turn conveyed it to Edith McCarthy by quitclaim deed.

Plaintiff contends (1) that it is entitled to enforce its judgment lien against the property, because the purchase of the certificate of sale by defendant constituted an equitable redemption by her from the first mortgage foreclosure sale and (2) that it is entitled to a money decree against Edith McCarthy personally under sections 10–14 of the Act pertaining to Frauds and Perjuries (pars. 10–14, ch. 59, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 55.10–55.14]). It will be noted that plaintiff's first contention pertains solely to its lien against the property as a judgment creditor and that its second contention concerns the alleged personal liability of defendant as the devisee of the property to pay her father's debts.

In support of its first contention that defendant's purchase of the certificate of sale constituted an equitable redemption, plaintiff asserts in its brief that "the crux of the entire law suit lies in the purchase by Edith McCarthy of the master's certificate of sale in the name of her dummy, Eunice Lacek," and that said certificate of sale was so purchased "to avoid payment of the lien of the plaintiff against the real estate in question." Plaintiff's position in this regard is predicated in part on the erroneous assumption that defendant owed plaintiff the duty of redeeming the property from the foreclosure sale to protect its lien. Edith McCarthy was not obligated under the law to protect the lien of the First National Bank. Said bank abandoned its lien by foregoing its own right to redeem.

Before considering the question as to whether or not Edith McCarthy was guilty of fraud in relation to any transaction involved herein, we deem it appropriate

to advert briefly to her pecuniary situation, the value of the property and the extent to which it was encumbered prior to the expiration of her redemption period.

The record discloses that Edith McCarthy had no funds of her own with which to redeem and, if it be assumed that she could have made a mortgage loan under the then existing conditions and thus have been enabled to redeem from the foreclosure sale, a redemption by her would have been fruitless, because she would still have been left without any equity in the property. It is undisputed that the value of the property at the time she filed her answer to the foreclosure complaint was approximately $20,000. If defendant had redeemed by making a mortgage loan, the property would have been encumbered with a new mortgage of more than $6,000 in place of the Wilmette State Bank mortgage that had been foreclosed. It would also have been encumbered with plaintiff's judgment lien for at least $12,000, including principal and interest on its $11,000 note, and with tax liens exceeding $2,000. Under these circumstances it would have been highly improvident, to say the least, for defendant to have redeemed from the foreclosure sale.

It is not claimed that defendant used any fraudulent device or scheme to induce plaintiff to forego its own right to redeem. In failing to redeem, it followed the course of its own choosing, abandoned its lien on the property and was thereafter "barred and foreclosed" under the decree of sale "from all equity of redemption and claim to the mortgaged premises."

It will be remembered that when Quinlan & Tyson used Eunice Lacek as Edith McCarthy's nominee in the purchase of the certificate of sale, the First National Bank had already abandoned its lien by reason of its failure to redeem. This being so, what possible difference did it make to plaintiff whether the certificate of sale was purchased in the name of defendant

or in the name of a nominee. But it did make a differ- ence to defendant. Quinlan & Tyson, acting as her agent in the transaction, knew that, notwithstanding the foreclosure sale and her failure to redeem there- from, Edith McCarthy still retained the naked legal title to the property, which could only be divested by the issuance of a master's deed. It therefore became necessary for Quinlan & Tyson to select a nominee to whom the certificate of sale might be assigned and the master's deed issued. The execution and delivery of the master's deed to Eunice Lacek divested Edith McCarthy of her naked legal title to the property and made it possible for her to reacquire the premises by deed from Eunice Lacek, subject only to the lien of the new first mortgage loan. We fail to perceive how the manner in which defendant's agent, Quinlan & Tyson, purchased the certificate of sale effected a fraudulent result so far as plaintiff was concerned, inasmuch as it had theretofore abandoned its lien on and interest in the premises.

It must be borne in mind that immediately after the expiration of plaintiff's redemption period the Wil- mette State Bank, as the owner of the certificate of sale, had the absolute right to a master's deed. In- stead of exercising that right, the Wilmette State Bank transferred it to defendant by assigning to her the certificate of sale in the name of a nominee. There- fore, it was solely by reason of the magnanimity of the Wilmette State Bank that defendant was enabled to secure title to the property, subject only to the lien of the new mortgage. If, instead of assigning the certificate of sale to defendant in the name of a nom- inee, the Wilmette State Bank had procured a master's deed immediately after the expiration of plaintiff's redemption period and then sold the property directly to defendant for the amount represented by its cer- tificate of sale and interest thereon, it certainly could not be said that the purchase of the property by de-

fendant under such circumstances would constitute an equitable redemption, which restored plaintiff's lien. Neither can it be said, in our opinion, that defendant's purchase of the certificate of sale under the circumstances shown herein constituted an equitable redemption, which restored plaintiff's abandoned judgment lien.

Plaintiff advances the suppositious theory that since the naked legal title to the property remained in defendant, notwithstanding her failure to redeem from the foreclosure sale, and since such title could only be divested by the issuance of a master's deed, "if a master's deed does not issue within five years after the sale pursuant to statute, the certificate of sale becomes void, and the owner's title continues divested of the charge against the land, represented by the original mortgage lien which was foreclosed." Plaintiff's position in this regard is untenable because it is predicated on the remote possibility that, if the Wilmette State Bank had not assigned the certificate of sale to defendant, it might have failed to procure a master's deed within five years after the expiration of the period during which the First National Bank had the right to redeem.

It is also contended that, since defendant planned the purchase of the certificate of sale before the expiration of plaintiff's right to redeem, she must have had an arrangement with the Wilmette State Bank, whereby the latter would sell the certificate of sale to her and that such arrangement "constituted an agreement for an extension of time for a redemption beyond the statutory redemption period."

There is not a single fact or circumstance in evidence which shows or tends to show that the Wilmette State Bank agreed with defendant during her period of redemption to permit her to purchase the certificate of sale and, in the absence of such evidence,

plaintiff's instant contention must be considered as being predicated solely on conjecture.

We are impelled to the conclusion from the facts and circumstances in evidence that defendant did not use any fraudulent device or scheme to induce plaintiff to forego its right to redeem or to prevent it from exercising such right, that defendant was not guilty of fraud either in respect to her plan to purchase the certificate of sale in the event plaintiff did not exercise its right to redeem or because the certificate of sale was purchased and the master's deed issued in the name of a nominee selected for her by her agent, Quinlan & Tyson, and that no fraudulent purpose was accomplished by defendant's purchase of the certificate of sale in the name of a nominee.

Numerous authorities are cited by plaintiff in support of its contention that defendant's purchase of the certificate of sale constituted an equitable redemption of the property. We have carefully examined these authorities and find that not a single one of them is applicable to the situation presented here. In calling our attention to *Casper Nat. Bank v. Jenner,* 268 Ill. 142, plaintiff stated in its brief that it was held in that case that "the acquisition of an outstanding certificate of sale by the owner of the equity was tantamount to a redemption from the foreclosure sale." This is an incorrect statement as to what the court held in the *Jenner* case. The owner of the equity in that case did not acquire the certificate of sale at any time and it was not held therein that the acquisition of an outstanding certificate of sale by the owner of the equity was tantamount to a redemption from the foreclosure sale. There Mrs. Jenner, who was the owner of the equity and in possession of the property, actually redeemed from the foreclosure sale within the time required by law, while in the case at bar Edith McCarthy did not redeem from the foreclosure sale.

No case has been called to our attention nor have we been able to find one, wherein it is held, in the absence of fraud, that the purchase of an outstanding certificate of sale by the owner of the legal title to property under circumstances such as appear herein constitutes an equitable redemption, the effect thereof being to restore a lien against such property, which had been abandoned by the judgment creditor's failure to redeem from the foreclosure sale within the time required by law.

Since plaintiff's failure to redeem was not influenced by any inequitable or fraudulent conduct on the part of defendant but was entirely a matter of its own choice, whatever benefit accrued to Edith McCarthy by her purchase of the certificate of sale resulted solely from the generosity and favor of the Wilmette State Bank in permitting her to purchase said certificate.

We are impelled to hold that defendant's purchase of the certificate of sale did not constitute an equitable redemption by her from the foreclosure sale and that the purchase of said certificate after the expiration of plaintiff's redemption period did not restore its abandoned judgment lien.

This brings us to plaintiff's contention that it is entitled to a money decree against Edith McCarthy personally under sections 10–14 of the Frauds and Perjuries Act (pars. 10–14, ch. 59, Ill. Rev. Stats. 1945 [Jones Ill. Stats. Ann. 55.10–55.14]). Section 12 of said act provides in part as follows:

"When any lands, tenements or hereditaments, or any rents or profits out of the same, shall descend to any heir, or be devised to any devisee, and the personal estate of the ancestor of such heir or devisor of such devisee shall be insufficient to discharge the just demands against such ancestor, or devisor's estate, such heir or devisee shall be liable to the creditor of their ancestor or devisor to the full amount of the lands, tenements or hereditaments, or rents and profits

out of the same, as may descend or be devised to the said heir or devisee. . . .''

It has been repeatedly held that under the foregoing provisions' of the statute the obligation of a devisee to pay the debts of his ancestor is limited to the value of property he has actually received as his inheritance, without reference to the value of the estate that may have vested in him upon the death of his devisor. (18 C. J., paragraph 274, page 942; *Branger v. Lucy*, 82 Ill. 91; *Kerr v. Schrempp*, 325 Ill. App. 614, 623.)

There is no evidence in the record that Edith McCarthy received any rents from the property during the period of approximately one year that intervened between the death of her father and the institution of the foreclosure suit by the Wilmette State Bank and it sufficiently appears from what has already been said that she completely lost the property as the result of said foreclosure. Therefore, the only thing of value that she actually received under the devise from her father was $1,120.17 in rents paid to her by the receiver. But plaintiff is not entitled to recover a judgment against defendant for even that amount. The burden was on the First National Bank to prove that the personal estate of defendant's father was insufficient to pay his debts and the only evidence it presented in this regard was the inventory filed in the probate court of Cook county by the administrator with the will annexed of the estate of Edward J. McCarthy. This inventory was admitted in evidence over defendant's objection. It was held in *Monroe v. Becker*, 283 Ill. 42, at p. 49, that inventories filed in the estates of deceased persons are competent evidence against the person making them, "tending to show what property the deceased owned at his death" but "they are not evidence against any other person." Since the trial court erred in admitting the aforesaid inventory in evidence, it is unnecessary to discuss the

contents thereof. It necessarily follows that plaintiff utterly failed to prove by competent evidence that there was an insufficiency of personal property in the estate of Edward J. McCarthy to pay his debts.

Other points are urged both for the affirmance and the reversal of the decree of the trial court. We have carefully considered these points but in the view we take. of this case we deem it unnecessary to discuss them.

For the reasons stated herein the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.